# **<u>EXHIBIT</u>**

# **<u>A</u>**

# The Jerome N. Frank Legal Services Organization

### YALE LAW SCHOOL

April 12, 2017

*Submitted Online and by FedEx; Return Receipt Requested*

U.S. Customs and Border Protection
FOIA Officer / Public Liaison
90 K Street NE., 9th Floor
Washington, DC 20229-1181
Phone: (202) 325-0230

U.S. Department of Homeland Security, Privacy Office
Senior Director of FOIA Operations
245 Murray Lane SW, STOP-0655
Washington, DC 20598-0655

Re:   **Request Under Freedom of Information Act**
      **(Expedited Processing & Fee Waiver / Limitation Requested)**

To Whom It May Concern:

This letter constitutes a request for records made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and its relevant implementing regulations, 6 C.F.R. § 5 *et seq.*, by the Council on American-Islamic Relations – Connecticut ("CAIR-CT"), and Make the Road New York ("MRNY") (hereinafter collectively referred to as "Requestors").

The Requestors make this request for records related to the policy, procedures, and practices of United States Customs and Border Protection ("CBP") with respect to the screening and search of individuals arriving at U.S. ports of entry and at preclearance locations. The Requestors, non-profit organizations serving immigrant communities, are concerned that in recent months, CBP has been targeting actual or perceived members of particular religious, ethnic, racial, and/or other groups for special treatment in the course of screening, inspecting, questioning, and processing individuals arriving at U.S. ports of entry and at preclearance locations. Given the widespread media coverage of President Trump's immigration policies and executive orders, as well as numerous demonstrations that have been held to protest these policies, the Requestors believe these records will contribute significantly to public understanding of the operations or activities of the government.

The Requestors are concerned that such targeting may result both from policies, procedures, or directives issued by supervising officials and from the discretion of individual officers. Therefore, Requestors seek two types of information, as further detailed in Part I:

1. Policies, practices, training material, communications, and informal understandings related to the search, screening, and processing of individuals by CBP at ports of entry

Freedom of Information Act Request
April 12, 2017

and preclearance locations, as well as those related to the custody conditions during such search, screening, and processing.

2. <u>Numerical data and statistics</u> showing the number of individuals who have been subject to heightened screening procedures, visa revocations, waivers of enforcement, and complaints of treatment, disaggregated by nationality of individuals and other demographic characteristics. Requestors do not seek records of individuals processed by CBP, but rather aggregated data or reports summarizing total numbers disaggregated by nationality and other demographic characteristics.

## I.  **Requested Records**[1]

1. Any and all policy guidance, directives, memoranda, operational resources, or other similar records created, modified, sent, received, and/or collected on or after November 8, 2016 which relate or refer in any way to any of the following:

   a. Executive Order No. 13,769, entitled, "Protecting the Nation From Foreign Terrorist Entry Into the United States," 82 Fed. Reg. 8,977 (Jan. 27, 2017) ("EO 1").
   b. Executive Order 13,780, entitled, "Protecting the Nation From Foreign Terrorist Entry Into the United States," 82 Fed. Reg. 13,209 (Mar. 6, 2017) ("EO 2").
   c. The memorandum dated March 6, 2017 entitled, "Implementing Immediate Heightened Screening and Vetting of Applications for Visas and Other Immigration Benefits, Ensuring Enforcement of All Laws for Entry Into the United States, and Increasing Transparency Among Departments and Agencies of the Federal Government and for the American People," 82 Fed. Reg. 16,279.
   d. The screening and search of individuals arriving at U.S. ports of entry and preclearance locations. This includes, but is not limited to, any and all such records relating to guidance, instructions, and/or training as to:
      i. Inadmissibility determinations;
      ii. "No board" recommendations issued to carriers and host governments;
      iii. Specialized carrier- or host government-specific screening or security measures;
      iv. The type of questioning individuals may be subjected to during primary screening, secondary screening, extended questioning, enforcement examinations, or similar heightened screening procedures;

---

[1] The term "records" as used herein includes, but is not limited to: text communications between phones or other electronic devices (including, but not limited to, communications sent via SMS or other text, Blackberry Messenger, iMessage, WhatsApp, Facebook, Signal, Gchat, Twitter direct message, or similar forms of communication); e-mails; images, video, and audio recorded on cell phones; voicemail messages; social-media posts; instructions; directives; guidance documents; formal and informal presentations; training documents; bulletins; alerts; updates; advisories; reports; legal and policy memoranda; contracts or agreements; minutes or notes of meetings and phone calls; and memoranda of understanding.

Freedom of Information Act Request
April 12, 2017

       v.   When secondary screening, extended questioning, enforcement examinations, or similar heightened screening procedures may be used;

      vi.   When CBP officers may request to search contents of cell phones and other electronics;

    vii.   When screening criteria based on physical appearance, garb, place of birth, actual or perceived religion, language, political opinion, ideology, port of embarkation, or citizenship may be used.

e. Threat assessment advisories or other documents directing CBP screening priorities.

f. The conditions in which individuals arriving at ports of entry or embarking from preclearance locations are processed, held in CBP custody, held for secondary inspection, subjected to inspection by CBP, or questioned by CBP, including, but not limited to, any and all such records related to:

       i.   The length of time for which individuals may be processed, detained, held for additional screening or processing, held in CBP custody, held under inspection by CBP, or are questioned by CBP;

      ii.   The ability of individuals being held or processed by CBP, undergoing inspection by CBP, or being questioned by CBP to contact others, either in person or by telephone, including attorneys and family members;

    iii.   Provisions for access to legal counsel while individuals are being held or processed by CBP, undergoing inspection by CBP, or being questioned by CBP, including, but not limited to:

         1.   The ability of an attorney to be present during their client's interactions with CBP;

         2.   The ability of an individual to contact their attorney via telephone or text message during interactions with CBP;

         3.   The role that attorneys may play during their client's interactions with CBP.

    iv.   Handling of attorney requests to consult with clients held or processed by CBP, undergoing inspection by CBP, or being questioned by CBP, including:

         1.   Denials of attorney requests to consult with clients held or processed by CBP, undergoing inspection by CBP, or being questioned by CBP;

         2.   Grants of attorney requests to consult with clients held or processed by CBP, undergoing inspection by CBP, or being questioned by CBP.

      v.   Policies governing advising and securing withdrawal of applications for admission or entry to the United States.

    vi.   Provision of food, water, sanitary facilities, medical care, and other necessities during the time that individuals are in CBP custody, undergoing inspection by CBP, or being questioned by CBP.

g. Case-by-case waivers of suspension of admission pursuant to Section 3(g) of EO 1, including, but not limited to, guidance, instruction, training, or advice, such as policy guidance, directives, memoranda, staff emails, and training materials regarding the implementation or interpretation of that Executive Order.

Freedom of Information Act Request
April 12, 2017

      h. Case-by-case waivers of suspension of admission pursuant to Section 3(c) of EO 2, including, but not limited to, guidance, instruction, training, or advice, such as policy guidance, directives, memoranda, staff emails, and training materials regarding the implementation or interpretation of that Executive Order.

      i. Revocation of visas at the border including, but not limited to, guidance, instruction, training, or advice regarding this practice.

      j. Supervisory oversight of inspections and questioning of applicants for admission at ports of entry and overseas preclearance sites, including, but not limited to, any and all such records related to:

            i. Complaints of mistreatment or violations of law or agency policy by CBP officers;

            ii. Discipline of CBP officers for mistreatment of individuals or violations of law or agency policy by CBP officers;

            iii. Discipline or supervisory oversight of CBP officers for mistreatment or violations of law or agency policy.

2. Any and all training memos, manuals, PowerPoint presentations, guidance, or other similar records created, modified, sent, received, and/or collected on or after November 8, 2016 that relate to any of the topics listed in paragraphs 1(a)-(j), above.

3. Any and all e-mails; text communications between phones or other electronic devices; and voicemail messages sent or received by the following individuals, on or after November 8, 2016, that relate to any of the topics listed in paragraphs 1(a)-(j), above:

      a. Todd C. Owen, Executive Assistant Commissioner, Office of Field Operations

      b. Kevin K. McAleenan, Acting Commissioner, CBP

      c. Gil Kerlikowske, former Commissioner, CBP

      d. Randolph D. Alles, Acting Deputy Commissioner, CBP

      e. Scott K. Falk, General Counsel, CBP

      f. Any other individuals who served in any of the aforementioned positions at any point on or after November 8, 2016;

      g. Any individual who served as the seniormost official in the Office of the Chief of Staff, CBP, at any point on or after November 8, 2016;

      h. Any individual who served as the seniormost official in a CBP field office, at any point on or after November 8, 2016;

      i. Any individual who served as the seniormost official at a port of entry, at any point on or after November 8, 2016.

4. Records created, modified, sent, received, and/or collected on or after November 8, 2015 sufficient to show the following:

      a. Rates of visa revocations including, but not limited to:

            i. Numerical data and statistics sufficient to show the number of requests made by CBP or any other government agency to the United States Department of State for revocations of visas, or denials of admission at the border, disaggregated by nationality or country of origin of arriving individuals, aggregated per week;

Freedom of Information Act Request
April 12, 2017

      ii. Numerical data and statistics sufficient to show the number of individuals who withdrew their application for admission or entry or who voluntarily departed the country, aggregated per week.

  b. Rates of case-by-case waivers of suspension of admissions pursuant to Section 3(g) of EO 1 or Section 3(c) of EO 2 including, but not limited to:

      i. Numerical data and statistics sufficient to show the numbers of waivers of suspension of admissions pursuant to Section 3(g) of EO 1 considered and granted at the border, disaggregated by nationality or country of origin of arriving individuals, aggregated per week;

      ii. Numerical data and statistics sufficient to show the numbers of waivers of suspension of admissions pursuant to Section 3(c) of EO 2 considered and granted at the border, disaggregated by nationality or country of origin of arriving individuals, aggregated per week.

  c. Rates of application of secondary and heightened screening at ports of entry and overseas preclearance sites, including, but not limited to:

      i. Numerical data and statistics sufficient to show the number of individuals referred to secondary screening, disaggregated by country of origin, port of embarkation, and whether their names appeared on a previously compiled watch list, including the No Fly List, the Terrorist Screening Database Terrorist Watchlist, the Secondary Screening Security Screening List, or any similar list, aggregated per week;

      ii. Numerical data and statistics sufficient to show the number of individuals who have been subject to heightened screening procedures, visa revocations, waivers of enforcement, and complaints of treatment, disaggregated by country of origin, port of embarkation, and whether their names appeared on a previously compiled watch list, including the No Fly List, the Terrorist Screening Database Terrorist Watchlist, the Secondary Screening Security Screening List, or any similar list, aggregated per week.

  d. Supervisory oversight of inspections and questioning of applicants for admission at ports of entry and at preclearance locations, including, but not limited to:

      i. Numerical data and statistics sufficient to show the number of complaints of mistreatment or violations of law or agency policy by CBP officers, aggregated per week;

      ii. Numerical data and statistics sufficient to show the rate of discipline of CBP officers for mistreatment of individuals or violations of law or agency policy by CBP officers, aggregated per week.

  e. Duration for which individuals arriving at ports of entry or embarking from preclearance locations are held in CBP custody, undergo inspection by CBP, or are questioned by CBP, including, but not limited to, records sufficient to show: the average length of time for which individuals are detained or held for additional screening or processing, placed in secondary screening, held in CBP custody, are under inspection by CBP, or are questioned by CBP, aggregated per week.

5. All records created, sent, received, referenced, and/or used in fulfilling and/or responding to this Request.

Freedom of Information Act Request
April 12, 2017

We request that searches of all electronic and paper/manual indices, filing systems, and locations for any and all records relating or referring to the subject of our Request be conducted. This includes, but is not limited to, the personal email accounts and work phones of all employees and former employees who may have sent or received emails, text messages, or other communications regarding the subject matter of this Request, as well as all institutional, shared, group, duty, task force, and all other joint and/or multi-user email accounts, work phones, and/or other digital or analog means of communication which may have been utilized by each such employee or former employee. Additionally, for each relevant email account identified, all storage areas are included in this Request, including, but not limited to, the inbox "folder" (and all subfolders therein), sent folder, deleted folder, outbox folder, and all relevant archive files.

Please search all records regarding agency business. You may not exclude searches of files or emails in the personal custody of your officials, such as personal email accounts. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA.[2] It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; Requestors have a right to records contained in those files even if material has not yet been moved to official systems or if officials have, through negligence or willfulness, failed to meet their obligations.[3]

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information. Recent technology may have rendered CBP's prior FOIA practices unreasonable. In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable to rely exclusively on custodian-driven searches.[4] Furthermore, agencies that have adopted the National Archives and Records Agency (NARA) Capstone program, or similar policies, now

---

[2] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149-50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955-56 (D.C. Cir. 2016).

[3] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016) ("The Government argues that because the agency had a policy requiring [the official] to forward all of his emails from his [personal] account to his business email, the [personal] account only contains duplicate agency records at best. Therefore, the Government claims that any hypothetical deletion of the [personal account] emails would still leave a copy of those records intact in [the official's] work email. However, policies are rarely followed to perfection by anyone. At this stage of the case, the Court cannot assume that each and every work related email in the [personal] account was duplicated in [the official's] work email account." (citations omitted)).

[4] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), *available at* https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), *available at* https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

Freedom of Information Act Request
April 12, 2017

maintain emails in a form that is reasonably likely to be more complete than individual custodians' files. For example, a custodian may have deleted a responsive email from his or her email program, but CBP's archiving tools would capture that email under Capstone. Accordingly, the Requestors insist that CBP use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. Requestors are available to work with you to craft appropriate search terms. However, custodian searches are still required; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

If any records responsive or potentially responsive to the Request have been destroyed, our Request includes, but is not limited to, any and all records relating or referring to the destruction of those records. This includes, but is not limited to, any and all records relating or referring to the events leading to the destruction of those records.

With respect to the form of production, CAIR-CT and MRNY request that responsive electronic records be provided electronically in their native file format, if possible, except that aggregated data be provided in searchable Microsoft Excel spreadsheets, if possible. *See* 5 U.S.C. § 552(a)(3)(B). Alternatively, CAIR-CT and MRNY request that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

## II.   **Application for Expedited Processing**

The Requestors ask for expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the information, as defined by the statute, because the Requestors are organizations "primarily engaged in disseminating information" and have an "urgency to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). The Requestors also independently seek expedited processing because the records involve "[a] matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(iv).

A.     *Requestors are organizations primarily engaged in disseminating information in order to inform the public about actual or alleged government activity*

Dissemination of information to the public is a critical and substantial component of Requestors' missions and work. The Requestors distribute information and research they gather to the public through various publications, educational sessions, and electronic communications, thus qualifying them as organizations "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also Am. Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (explaining that non-profit public-interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" is "primarily engaged in disseminating information").

**CAIR-CT** is a non-profit 501(c)(3) organization dedicated to presenting an Islamic perspective on issues of importance to the American public. CAIR-CT's mission is to enhance

Freedom of Information Act Request
April 12, 2017

the understanding of Islam, encourage dialogue, protect civil liberties, empower American Muslims, and build coalitions that promote justice and mutual understanding. CAIR works to promote civil rights by mediating on behalf of Muslims who have experienced discrimination, helps elected officials to understand policy issues related to Islam and Muslims, and monitors legislation and government activities. As the Connecticut chapter of a national organization, CAIR-CT specifically works on behalf of Connecticut's more than 150,000 Muslims.

As part of its policy advocacy and monitoring of news media and public policy, CAIR-CT publishes news and alerts regarding issues affecting the Muslim community, including "Action Alerts" and press releases regarding legal issues affecting Muslims.[5] CAIR-CT also conducts trainings and educational workshops addressing interactions with law enforcement and other government officials, including regular trainings at local masaajid and Islamic centers throughout Connecticut aimed at educating people on issues affecting the Muslim community. CAIR-CT also works with local and national media to ensure that an accurate image of Islam and Muslims is presented to the American public.

**MRNY** is a non-profit 501(c)(3) organization dedicated to empowering immigrant, Latino, and working-class communities in New York City. As an integral part of its mission, MRNY educates the public about civil-rights issues affecting working-class and immigrant communities through electronic newsletters, reports, fact sheets, trainings, curricula, classes, and other educational and informational material. MRNY also disseminates information and analyses on pending and proposed legislation, engages in public policy advocacy, and mobilizes community members to advocate to their legislators.

As part of its organizing and public-policy advocacy efforts, MRNY conducts research on issues affecting the community it serves and conducts substantial outreach to policymakers and the media. MRNY regularly conducts research and publishes reports, fact sheets, and other informational material on issues important to the immigrant, Latino, and working class communities it serves. MRNY also conducts educational workshops on the risks and benefits of applying for renewed Deferred Action for Childhood Arrivals ("DACA") applications. Additionally, MRNY frequently releases media statements, and disseminates information about local, state, and national issues to its thousands of members and to the public at large.

MRNY also directly educates members of the New York community through classes and trainings and may find information obtained through this request useful in its educational activities. Among other activities, MRNY: (1) conducts "Know Your Rights" trainings on subjects such as what to do when encountering law enforcement, with the goal of increasing the

---

[5] *See, e.g.*, *CAIR Community Alert: Khatibs Urged to Address Post-Election Concerns in Muslim Community During Jummah Prayers*, COUNCIL ON AMERICAN-ISLAMIC RELATIONS (Nov. 11, 2016), http://www.cair.com/press-center/american-muslim-news/13883-cair-community-alert-khatibs-urged-to-address-post-election-concerns-in-muslim-community-during-jummah-prayers.html; *CAIR Asks GOP to Repudiate Islamophobic Remarks of Delaware Lawmaker Who Walked Out Before Muslim Prayer*, COUNCIL ON AMERICAN-ISLAMIC RELATIONS (Apr. 6, 2017), http://www.cair.com/press-center/press-releases/14259-cair-asks-gop-to-repudiate-islamophobic-remarks-of-delaware-lawmaker-who-walked-out-before-muslim-prayer.html.

Freedom of Information Act Request
April 12, 2017

community's ability to enforce their own rights while building their practical knowledge of the laws that affect them most; (2) educates thousands of immigrants and their families about deportation relief options and available services; and (3) provides comprehensive skills training to hundreds of low-income New Yorkers each year on leadership skills, media advocacy, civics, community and electoral organizing, and strategic policy advocacy.

B.      *The records sought are urgently needed to inform the public about actual or alleged government activity*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). The question of discriminatory policies being applied to individuals perceived to be Muslims or members of other targeted groups has been the subject of extensive media coverage in almost every major media outlet. In addition to numerous lawsuits,[6] the public has expressed its concern and engagement with this issue through numerous large protests.[7]

On January 27, 2017, President Donald J. Trump issued an executive order that indefinitely blocked refugees from Syria from entering the United States, barred all refugees for 120 days, and prohibited individuals from seven predominantly Muslim countries – Iran, Iraq, Libya, Somalia, Sudan, Syria and Yemen – from entering the United States for 90 days.[8] By the following day, January 28, 2017, CBP officials across the country had detained an estimated 100 to 200 individuals at airports throughout the United States.[9] Soon thereafter, Judge Donnelly of the Eastern District of New York issued a nationwide order in *Darweesh v. Trump*, that prohibited the government from removing any detained travelers from the seven banned countries who had been legally authorized to enter the United States.[10] Meanwhile, protests erupted at airports across the country as volunteer attorneys stood by to assist detained travelers and their families.[11]

---

[6] *See, e.g.*, *Legal Challenges Mount Against Trump's Travel Ban*, N.Y. TIMES (Jan. 30, 2017), https://www.nytimes.com/2017/01/30/us/legal-challenges-mount-against-trumps-travel-ban.html.

[7] *See, e.g.*, *Thousands Protest Against Trump Travel Ban in Cities and Airports Nationwide*, GUARDIAN (Jan. 29, 2017), https://www.theguardian.com/us-news/2017/jan/29/protest-trump-travel-ban-muslims-airports.

[8] Exec. Order No. 13,769, 82 Fed. Reg. 8977 (Feb. 1, 2017).

[9] *See, e.g.*, Michael D. Shear *et al., Judge Blocks Trump Order on Refugees Amid Chaos and Outcry Worldwide,* N.Y. TIMES (Jan. 28, 2017), https://www.nytimes.com/2017/01/28/us/refugees-detained-at-us-airports-prompting-legal-challenges-to-trumps-immigration-order.html.

[10] Decision and Order, *Darweesh v. Trump*, No. 17 Civ. 480 (AMD) (E.D.N.Y. Jan. 28, 2017), https://www.aclu.org/legal-document/darweesh-v-trump-decision-and-order.

[11] *See, e.g.*, Peter Baker, *Travelers Stranded and Protests Swell Over Trump Order*, N.Y. TIMES (Jan. 29, 2017), https://www.nytimes.com/2017/01/29/us/politics/white-house-official-in-reversal-says-green-card-holders-wont-be-barred.html.

Freedom of Information Act Request
April 12, 2017

      Several days later, Judge Robart of the Western District of Washington issued a nationwide order suspending enforcement of President Trump's executive order.[12] That decision was affirmed by the Ninth Circuit.[13] In response, President Trump issued a second executive order, revoking the first executive order, banning travel from certain predominantly Muslim countries, and suspending the refugee program.[14] Prior to its taking effect on March 16, 2017, federal district courts in Hawaii and Maryland blocked the order's sections affecting travel and refugees, citing that the order was likely motivated by an intent to discriminate against Muslims.[15]

      Despite the suspension of the executive orders, news organizations have reported that Muslim travelers, both U.S. citizens and non-citizens, have been detained and interrogated about their religious beliefs at U.S. airports.[16] Similarly, civil liberties groups have filed complaints alleging that CBP has subjected Muslim travelers to additional questioning and demanded that they unlock phones and other electronic devices for search.[17] Other outlets cite evidence that the executive orders, though suspended, have emboldened federal officers to "act more aggressively."[18] These incidents have caused many to forgo travel for fear that they will be stopped and questioned based upon their heritage or country of birth.[19]

---

[12] Temporary Restraining Order, *Washington v. Trump*, No. C17-0141JLR (W.D. Wash. Feb. 3, 2017), https://www.clearinghouse.net/chDocs/public/IM-WA-0029-0005.pdf.

[13] Order, *Washington v. Trump*, No. 17-35105 (9th Cir. Feb. 9, 2017), https://www.clearinghouse.net/chDocs/public/IM-WA-0029-0067.pdf.

[14] Exec. Order No. 13,780, 82 Fed. Reg. 13209 (Mar. 6, 2017).

[15] Matt Zapotosky, *Second Federal Judge Blocks Revised Trump Travel Ban*, WASH. POST (Mar. 16, 2017), https://www.washingtonpost.com/local/social-issues/second-federal-judge-blocks-revised-trump-travel-ban/2017/03/16/dc47cd1e-0a2a-11e7-93dc-00f9bdd74ed1_story.html?utm_term=.0889b847b191.

[16] *See, e.g.*, Alex Kane, *Even Muslim-American Citizens Have Been Caught in The Net of Trump's Travel Ban*, NATION (Mar. 23, 2017), https://www.thenation.com/article/even-muslim-american-citizens-have-been-caught-in-the-net-of-trumps-travel-ban/; *Former NC Police Chief Detained at JFK for 90 Minutes*, N.Y. TIMES (Mar. 19, 2017), https://www.nytimes.com/aponline/2017/03/19/us/ap-us-former-police-chief-detained.html; Garrett Epps, *Papers, Please*, ATLANTIC (Feb. 27, 2017), https://www.theatlantic.com/politics/archive/2017/02/papers-please/517887/.

[17] Murtaza Hussain, *Complaints Describe Border Agents Interrogating Muslim Americans, Asking For Social Media Accounts*, INTERCEPT (Jan. 14, 2017), https://theintercept.com/2017/01/14/complaints-describes-border-agents-interrogating-muslim-americans-asking-for-social-media-accounts/.

[18] Dana Milbank, *Do Vigilantes See Trump Giving Them a Wink And a Nod?*, WASH. POST (Mar. 1, 2017), https://www.washingtonpost.com/opinions/under-trumps-command-the-skies-become-decidedly-less-friendly/2017/03/01/7a1d9126-fed3-11e6-99b4-9e613afeb09f_story.html.

[19] Kristina Jovanovski, *Canada's Largest School Board Will End Class Trips To The U.S. Due To Trump's Travel Restrictions*, L.A. TIMES (Mar. 30, 2017), http://www.latimes.com/world/la-fg-canada-travel-20170324-story.html.

Freedom of Information Act Request
April 12, 2017

Accordingly, the Requestors seek to supplement the public record and to inform the public about CBP's policies and practices in subjecting individuals at ports of entry to heightened questioning and screening procedures. Extensive media coverage and public protests demonstrate that this is a topic of great import and general concern, about which it is urgent that the public remain informed. *See* 6 C.F.R. § 5.5(e)(3) (noting that "existence of numerous articles published on a given subject" can support urgency to inform public for purposes of expedited processing).

C.   *The records sought relate to a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence*

The records sought should also be processed on an expedited basis because they are related to a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence. *See* 6 C.F.R. § 5.5(e)(1)(iv). Extensive news reporting has been dedicated to the application of heightened screening procedures to individuals arriving at airports and perceived by CBP officers as belonging to targeted groups. *See supra* Section II.B. Further, because of perceived discriminatory application of screening procedures, questions have been raised about the integrity of both CBP officials[20] and the president himself.[21] These "possible questions," in and of themselves, render expedited processing appropriate. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 31 (D.D.C. 2004) (under identical expedited processing provision in Justice Department regulation, government integrity was implicated where "suggestions of possible violations of privacy rights" were raised by civil rights groups, members of Congress, and private citizens (citing 28 C.F.R. § 16.5(d)(1)(iv))).

Given the foregoing, the Requestors have satisfied the requirements for expedited processing of this Request on two independent grounds.

## III.   Application for Waiver or Limitation of Fees

The Requestors request a waiver of document search, review, and duplications fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The Requestors also request waiver of search and review fees on the

---

[20] *See, e.g.*, Edward Helmore & Alan Yuhas, *Border Agents Defy Courts on Trump Travel Ban, Congressmen and Lawyers Say*, GUARDIAN (Jan. 30, 2017), https://www.theguardian.com/us-news/2017/jan/29/customs-border-protection-agents-trump-muslim-country-travel-ban; *Muslims Claim Homeland Security Pulled Their Travel Documents*, DAILY BEAST (Mar. 9, 2017), http://www.thedailybeast.com/articles/2017/03/09/is-dhs-targeting-muslim-travelers-by-revoking-their-global-entry.html.

[21] *See* Benjamin Wittes & Quinta Jurecic, *What Happens When We Don't Believe the President's Oath?*, LAWFARE (Mar. 3, 2017), https://www.lawfareblog.com/what-happens-when-we-dont-believe-presidents-oath.

Freedom of Information Act Request
April 12, 2017

grounds that the Requestors qualify as "representatives of the news media" and the records are not sought for commercial use. *Id.* § 552(a)(4)(A)(ii)(II).

     A.    *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of Requestors*

As discussed above, widespread media coverage and public demonstrations underscore the continued public interest in the records sought through this Request. While much coverage has been dedicated to President Trump's executive orders, there has been relatively less attention devoted to the particular policies and practices CBP officers at ports of entry have adopted to implement the orders, or to effectuate the immigration-related policy statements of the Trump Administration. Until now, the public has received only anecdotal reports of CBP imposing increased screening requirements and detaining individuals at airports who appear to be from specific religious or ethnic groups.[22] The records sought will contribute significantly to the public's understanding of the government's operations by providing insight into whether CBP is specifically targeting individuals of particular religious or ethnic groups as a matter of policy or if CBP is engaging in a pattern of discrimination against particular religious or ethnic groups. The records will also inform the public about how CBP selects individuals for secondary screening, extended questioning, enforcement examinations, or other heightened screening procedures at ports of entry, and the type of treatment individuals selected for these procedures can expect, all of which otherwise occurs out of the public's view.

The Requestors are not filing this request to further their commercial interests. Any information disclosed to the Requestors as a result of this FOIA request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending the FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

     B.    *The Requestors are representatives of the news media and the records are not sought for commercial use*

The Requestors also request a waiver of search and review fees on the grounds that they qualify as "representative[s] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). As demonstrated above, the Requestors meet the statutory definition of a "representative of the news media" because they are entities "that gather[] information of potential interest to a segment of the public, [use their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience." *Id.* § 552(a)(4)(A)(ii)(III). In construing the term, "[i]t is critical that the phrase 'representative of the news media' be broadly interpreted if the act is to work as expected." *Nat'l Sec. Archive v. U.S.*

---

[22] *See, e.g., Former NC Police Chief Detained at JFK for 90 Minutes*, N.Y. TIMES (March 19, 2017), https://www.nytimes.com/aponline/2017/03/19/us/ap-us-former-police-chief-detained.html; Garrett Epps, *Papers, Please*, THE ATLANTIC (Feb. 27, 2017), https://www.theatlantic.com/politics/archive/2017/02/papers-please/517887/.

Freedom of Information Act Request
April 12, 2017

*Dep't of Defense*, 880 F.2d 1381, 1386 (D.C. Cir. 1989) (citations omitted). Here, for example, MRNY releases hundreds of press advisories each year, which distill information the organization has gathered and are disseminated to other news organizations and interested parties. The media advisories are also made publicly available on MRNY's website. *See Press Advisories*, Make the Road New York, http://www.maketheroadny.org/archive_type.php?ID=1 (Mar. 26, 2017). MRNY also publishes numerous policy reports to the public.[23]

Moreover, courts have found other organizations whose missions, functions, publications, and public education activities are similar in kind to the Requestors' to be "representatives of the news media" as well. *See, e.g., Serv. Women's Action Network v. U.S. Dep't of Defense*, 888 F. Supp. 2d 282, 287-88 (D. Conn. 2012) (finding that requestors, including organization that "empower[ed] current service women and female veterans through advocacy initiatives and community programs," were representatives of news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Defense*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003) (finding non-profit public-interest group that disseminated electronic newsletter and published books was "representative of the news media" for purposes of the FOIA); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (finding Judicial Watch, self-described as "public interest law firm," to be news-media requester). In each of these cases, the court has found these organizations to be "representatives of the news media" even though the requesting organizations also engage in litigation and advocacy activities beyond their dissemination of information and public education activities.

*        *        *

Pursuant to 5 U.S.C. § 552(a)(6)(E)(ii)(I), the Requestors expect a determination regarding expedited processing within ten days. If this request for records is denied in whole or in part, please justify all deletions and omissions by reference to specific FOIA exemptions. We expect CBP to release all segregable portions of otherwise exempt material. For example, we expect CBP to redact names of individuals for whom privacy waivers are not enclosed, if such redaction is required by the Privacy Act or other law, and to release any otherwise disclosable records as redacted.

---

[23] *See, e.g., The $ 3.4 Trillion: The Cost of Mass Incarceration and Criminalization and How Justice Reinvestment Can Build a Better Future for All*, Make the Road New York et al. (Oct. 17, 2016), http://www.maketheroadny.org/report.php?ID=4355; *Where's My Seat? How School Overcrowding Disproportionately Impacts Immigrant Communities in New York City*, Make the Road New York (Nov. 24, 2015), http://www.maketheroadny.org/report.php?ID=4178; *Lost in Translation: Report Card on Nassau County Agencies' Compliance with Language Access Executive Orders,* Make the Road New York (Aug. 18, 2014), http://www.maketheroadny.org/report.php?ID=3649; *Consumer Abuse and Environmental Hazards in New York City's Car Wash Industry*, Make the Road New York (Dec. 12, 2013), http://www.maketheroadny.org/report.php?ID=3275; *The Committee for Better Banks Report: The State of the Bank Employee on Wall Street*, Make the Road New York (Dec. 5, 2013), http://www.maketheroadny.org/report.php?ID=3201.

Freedom of Information Act Request
April 12, 2017

We reserve the right to appeal any decision relating to this FOIA request, including, but not limited to, the decision to withhold any information, or to deny expedited processing, or to deny a waiver or reduction of fees.

Thank you in advance for your timely consideration of this request. Please furnish records as soon as they are identified to the undersigned at:

> Muneer Ahmad
> Jerome N. Frank Legal Services Organization
> Yale Law School
> 127 Wall Street
> New Haven, CT 06511

We certify that the information provided supporting the request for expedited processing is true and correct to the best of our knowledge and belief.

Sincerely,

Muneer Ahmad
Jerome N. Frank Legal Services Organization
Yale Law School
127 Wall Street
New Haven, CT 06511

Adam Bradlow
David Chen
Jordan Laris Cohen
Susanna D. Evarts
Amit Jain
Clare Kane
Aaron Korthuis
Zachary Manfredi
Joseph Meyers
Victoria Roeck
*Law student interns*

# EXHIBIT
# B

1300 Pennsylvania Ave
RRB 2.4A
Washington, DC 20229

Joseph Meyers
Jerome N. Frank Legal Services Organization
127 Wall Street
New Haven, CT 06511

April 18, 2017

Dear Joseph Meyers:

This automated notice acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) received on 04/12/2017.   Please use the following unique FOIA tracking number CBP-OFO-2017-048412 to track the status of your request.  If you have not already done so, you must create a FOIAonline account at https://foiaonline.regulations.gov.  This is the only method available to check the status of your pending FOIA request.

Provisions of the Act allow us to recover part of the cost of complying with your request.  We shall charge you for records in accordance with the DHS FOIA regulations outlined on the DHS website, http://www.dhs.gov/xfoia/editorial_0579.shtm. By submitting your request, you have agreed to pay up to $25.00 in applicable processing fees, if any fees associated with your request exceed this amount, CBP shall contact you; however, the first 100 pages are free.

CBP's FOIA Division is working hard to reduce the amount of time necessary to respond to FOIA requests.  Currently, the average time to process a FOIA request related to "travel/border incidents" is a minimum of 3-6 months. We truly appreciate your continued patience.

For additional information please consult CBP FOIA website please click on FOIA Act Resources or visit http://www.cbp.gov/site-policy-notices/foia.

Sincerely,

Sharon Deshield
U.S. Customs and Border Protection

# **EXHIBIT**
# **C**

# The Jerome N. Frank Legal Services Organization

### Y A L E   L A W   S C H O O L

April 12, 2017

*By Certified Mail; Return Receipt Requested*

United States Citizenship and Immigration Services
National Records Center, FOIA/PA Office
P.O. Box 648010
Lee's Summit, MO 64064-8010
(816) 350-5570
Fax: (816) 350-5785
uscis.foia@dhs.gov

U.S. Department of Homeland Security, Privacy Office
Senior Director of FOIA Operations
245 Murray Lane SW STOP-0655
Washington, DC 20598-0655

**Re:**     **Request Under Freedom of Information Act**
            **(Expedited Processing & Fee Waiver / Limitation Requested)**

To Whom It May Concern:

This letter constitutes a request for records made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and its relevant implementing regulations, 6 C.F.R. § 5 *et seq.*, by the Council on American-Islamic Relations – Connecticut ("CAIR-CT") and Make the Road New York ("MRNY") (hereinafter collectively referred to as "Requestors").

The Requestors make this request for records related to the policy, procedures, and practices of United States Citizenship and Immigration Services ("USCIS") with respect to the adjudication of entry document applications, including visa petitions, travel document applications, applications for adjustment or change of status, and refugee/asylum applications. The Requestors, non-profit organizations serving immigrant communities, are concerned that recent months, USCIS has been targeting actual or perceived members of particular religious, ethnic, racial, and/or other groups for special treatment in the process of adjudicating applications for immigration benefits in the United States. Given the widespread media coverage of President Trump's immigration policies and executive orders, as well as numerous demonstrations that have been held to protest these policies, the Requestors believe these records will contribute significantly to public understanding of the operations or activities of the government.

The Requestors are concerned that such targeting may result both from policies, procedures, or directives issued by supervising officials and from the discretion of individual officers. As a result, Requestors seek two types of information, as further detailed in Part I:

Freedom of Information Act Request
April 12, 2017

1. <u>Policies, practices, training material, communications, and informal understandings</u> related to the criteria and/or grounds to be considered during visa petition adjudications, visa revocations, and consideration of refugee/asylum applications, including case-by-case waivers pursuant to recent Executive Orders.

2. <u>Numerical data and statistics</u> showing the number of individuals who have been subject to additional scrutiny, visa petition revocations, waivers of enforcement, or unfavorable treatment, disaggregated by nationality of individual and other demographic characteristics. Requestors do not seek records of individuals processed by USCIS, but rather aggregated data or reports summarizing total numbers disaggregated by nationality and other demographic characteristics.

## I.  **Requested Records**[1]

1. Any and all policy guidance, directives, memoranda, operational resources, or other similar records created, modified, sent, received, and/or collected on or after November 8, 2016 that relate or in any way refer to any of the following:

   a. Policies, procedures, and practices governing the adjudications of visa petitions, applications for waivers of grounds of inadmissibility, travel document applications, refugee/asylum applications, or applications for refugees for waivers of grounds of inadmissibility, including but not limited to the grounds and/or criteria for granting, denying, holding, and/or leaving unadjudicated visa petitions, waiver applications, travel document applications, refugee applications, or refugee waiver applications.

   b. Policies, procedures, and practices governing revocation, notification of intent to revoke, and/or termination of approved visa petitions, waiver applications, travel document applications, refugee applications, or refugee waiver applications, including but not limited to the grounds and/or criteria for revoking approved visa petitions, waiver applications, travel document applications, refugee applications, or refugee waiver applications.

   c. Policies, procedures, and practices related to the memorandum dated March 6, 2017, entitled, "Implementing Immediate Heightened Screening and Vetting of Applications for Visas and Other Immigration Benefits, Ensuring Enforcement of All Laws for Entry Into the United States, and Increasing Transparency Among Departments and Agencies of the Federal Government and for the American People," published at 82 Fed. Reg. 16,279.

---

[1] The term "records" as used herein includes, but is not limited to: text communications between phones or other electronic devices (including, but not limited to, communications sent via SMS or other text, Blackberry Messenger, iMessage, WhatsApp, Facebook, Signal, Gchat, Twitter direct message, or similar form of communication); e-mails; images, video, and audio recorded on cell phones; voicemail messages; social-media posts; instructions; directives; guidance documents; formal and informal presentations; training documents; bulletins; alerts; updates; advisories; reports; legal and policy memoranda; contracts or agreements; minutes or notes of meetings and phone calls; and memoranda of understanding.

Freedom of Information Act Request
April 12, 2017

    d. Case-by-case waivers of suspension of refugee admissions pursuant to Section 5(e) of Executive Order No. 13,769, entitled, "Protecting the Nation From Foreign Terrorist Entry Into the United States," 82 Fed. Reg. 8,977 (Jan. 27, 2017) ("EO 1"), including but not limited to records concerning:
      i. The grounds for such waivers, and
      ii. Guidance to USCIS officials and staff members concerning the criteria for eligibility for such waivers.
    e. Case-by-case waivers of suspension of refugee admissions pursuant to Section 6(c) of Executive Order No. 13,780, entitled, "Protecting the Nation From Foreign Terrorist Entry Into the United States," 82 Fed. Reg. 13,209 (Mar. 6, 2017) ("EO 2"), including but not limited to records concerning:
      i. The grounds for such waivers, and
      ii. Guidance to USCIS officials and staff members concerning the criteria for eligibility for such waivers.
    f. Policies, procedures, and practices related to case-by-case determinations or waivers in the national interest to issue visas or other immigration benefits pursuant to Section 3(g) of EO 1 and/or Section 3(c) of EO 2.
    g. Policies, procedures, and practices related to the consideration of rescinding the exercises of authority permitted by § 212(d)(3)(B) of the INA, 8 U.S.C. § 1182(d)(3)(B), relating to the terrorism grounds of inadmissibility, as well as any related implementing directives or guidance, pursuant to Section 6 of EO 1 and/or Section 7 of EO 2.
    h. Policies, procedures, and practices related to the exercises of authority permitted by § 212(d)(3)(B) of the INA, 8 U.S.C. § 1182(d)(3)(B), relating to the terrorism grounds of inadmissibility.
    i. All records related to planned or scheduled circuit rides, including but not limited to their location, timing, and interviewing priorities.

2. Any and all training memos, manuals, PowerPoint presentations, guidance, or other similar records created, modified, sent, received, and/or collected on or after November 8, 2016 that relate to any of the topics listed in paragraphs 1(a)-(i), above.

3. Any and all e-mails and/or text communications between phones or other electronic devices, received or sent by any of the following individuals, on or after November 8, 2016, that relate to any of the topics listed in paragraphs 1(a)-(i), above:

    a. Lori Scialabba, former Acting Director, USCIS;
    b. James McCament, Acting Director and Permanent Deputy Director, USCIS;
    c. Tracy Renaud, Acting Deputy Director, USCIS;
    d. Donald Neufeld, Associate Director, Service Center Operations Directorate, USCIS;
    e. Joanna Ruppel, Acting Associate Director, Refugee, Asylum and International Operations;
    f. Daniel Renaud, Associate Director, Field Operations Directorate;
    g. Donald Hawkins, Chief, Office of Privacy, USCIS;

Freedom of Information Act Request
April 12, 2017

      h. Any other individuals who served in any of the aforementioned positions at any point on or after November 8, 2016;

      i. Any individual who served as the seniormost official in the Office of Chief Counsel, USCIS, at any point on or after November 8, 2016;

      j. Any individual who served as the seniormost official in the Office of the Chief of Staff, USCIS, at any point on or after November 8, 2016.

4. Records sufficient to show the following:

      a. Disaggregated by type of visa petition, country of residence, nationality, race, ethnicity, gender, age, and religion, of both petitioner and beneficiary, where available:

         i. The number of visa petitions submitted from November 8, 2015 to the date this request is fulfilled, organized by week of submission;

         ii. The number of visa petitions approved from November 8, 2015 to the date this request is fulfilled, organized by week of approval;

         iii. The number of visa petitions left unadjudicated, held, or otherwise not granted from November 8, 2015 to the date this request is fulfilled, broken down by week and the status of the petition;

         iv. The number of approved visa petitions revoked by USCIS officers from November 8, 2015 to the date this request is fulfilled, organized by week of revocation.

      b. Disaggregated by type of benefit, ground of inadmissibility, country of residence, nationality, race, ethnicity, gender, age, and religion, of both petitioner and beneficiary, where available:

         i. The number of applications for waivers of grounds of inadmissibility submitted from November 8, 2015 to the date this request is fulfilled, organized by week of submission;

         ii. The number of applications for waivers of grounds of inadmissibility approved from November 8, 2015 to the date this request is fulfilled, organized by week of approval;

         iii. The number of applications for waivers of grounds of inadmissibility left unadjudicated, held, or otherwise not granted from November 8, 2015 to the date this request is fulfilled, broken down by week and the status of the application;

         iv. The number of applications for waivers of grounds of inadmissibility revoked by USCIS officers from November 8, 2015 to the date this request is fulfilled, organized by week of revocation;

      c. Disaggregated by type of travel document, country of residence, nationality, race, ethnicity, gender, age, and religion, of both petitioner and beneficiary, where available:

         i. The number of travel document applications submitted from November 8, 2015 to the date this request is fulfilled, organized by week of submission;

         ii. The number of travel document applications approved from November 8, 2015 to the date this request is fulfilled, organized by week of approval;

Freedom of Information Act Request
April 12, 2017

        iii. The number of travel document applications left unadjudicated, held, or otherwise not granted from November 8, 2015 to the date this request is fulfilled, broken down by week and the status of the application;

        iv. The number of approved travel document applications revoked by USCIS officers from November 8, 2015 to the date this request is fulfilled, organized by week of revocation.

    d. Disaggregated by location, nationality, gender, age, and religion of applicant, where available:

        i. The number of applications for refugee status submitted from November 8, 2015 to the date this request is fulfilled, organized by week of submission;

        ii. The number of refugee applications granted by USCIS (including grants of parole) from November 8, 2015 to the date this request is fulfilled, organized by week of grant;

        iii. The number of refugee applications denied by USCIS (including "No Decision" or "Not Qualified") from November 8, 2015 to the date this request is fulfilled, as well as the reason(s) why such applications were denied as stated on the applicable Notice of Ineligibility (if recorded), organized by week of denial;

        iv. The number of Requests for Review (RFRs) filed, approved for refugee status or parole, and denied from November 8, 2015 to the date this request is fulfilled, as well as the reason(s) why such applications were denied as stated on the applicable RFR Response (if recorded), organized by week of denial;

        v. The number of individual, case-by-case waivers of suspension of refugee admissions pursuant to Section 5(e) of EO 1;

        vi. The number of individual, case-by-case waivers of suspension of refugee admissions pursuant to Section 6(c) of EO 2.

        vii. The number of applications for naturalization submitted from November 8, 2015 to the date this request is fulfilled, organized by week of submission, and current status of the application;

        viii. The number of applications for naturalization approved from November 8, 2015 to the date this request is fulfilled, organized by week of approval and date the application was submitted;

    e. Disaggregated by ground of inadmissibility, country of residence, nationality, race, ethnicity, gender, age, and religion, of both petitioner and beneficiary, where available:

        i. The number of applications by a refugee for waivers of grounds of inadmissibility submitted from November 8, 2015 to the date this request is fulfilled, organized by week of submission;

        ii. The number of applications by a refugee for waivers of grounds of inadmissibility approved from November 8, 2015 to the date this request is fulfilled, organized by week of approval;

        iii. The number of applications by a refugee for waivers of grounds of inadmissibility left unadjudicated, held, or otherwise not granted from November 8, 2015 to the date this request is fulfilled, broken down by week and the status of the application;

Freedom of Information Act Request
April 12, 2017

      iv.  The number of applications by a refugee for waivers of grounds of inadmissibility revoked by USCIS officers from November 8, 2015 to the date this request is fulfilled, organized by week of revocation;

    f.  Disaggregated by type of application or benefit, specific type of exemption, country of residence, nationality, race, ethnicity, gender, age, and religion, of both petitioner and beneficiary, where available:

      i.  The number of cases of any type submitted for consideration of an exemption from the terrorism-related inadmissibility grounds from November 8, 2015 to the date this request is fulfilled, organized by week of submission;

      ii.  The number of cases of any type submitted for consideration of an exemption from the terrorism-related inadmissibility grounds that were approved from November 8, 2015 to the date this request is fulfilled, organized by week of approval;

      iii.  The number of cases of any type submitted for consideration of an exemption from the terrorism-related inadmissibility grounds that were left unadjudicated, held, or otherwise not granted from November 8, 2015 to the date this request is fulfilled, broken down by week and the status of the application;

      iv.  The number of cases of any type that had been previously approved for exemption from the terrorism-related inadmissibility grounds at any previous date that were denied by USCIS officers from November 8, 2015 to the date this request is fulfilled, organized by week of denial;

5.  All records created, sent, received, referenced, and/or used in fulfilling and/or responding to this Request.

    We request that searches of all electronic and paper/manual indices, filing systems, and locations for any and all records relating or referring to the subject of our Request be conducted. This includes, but is not limited to, the personal email accounts and work phones of all employees and former employees who may have sent or received emails, text messages, or other communications regarding the subject matter of this Request, as well as all institutional, shared, group, duty, task force, and all other joint and/or multi-user email accounts, work phones, and/or other digital or analog means of communication which may have been utilized by each such employee or former employee. Additionally, for each relevant email account identified, all storage areas are included in this Request, including, but not limited to, the inbox "folder" (and all subfolders therein), sent folder, deleted folder, outbox folder, and all relevant archive files.

    Please search all records regarding agency business. You may not exclude searches of files or emails in the personal custody of your officials, such as personal email accounts. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA.[2] It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain

---

[2] See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy, 827 F.3d 145, 149-50 (D.C. Cir. 2016); cf. Judicial Watch, Inc. v. Kerry, 844 F.3d 952, 955-56 (D.C. Cir. 2016).

Freedom of Information Act Request
April 12, 2017

period of time; Requestors have a right to records contained in those files even if material has not yet been moved to official systems or if officials have, through negligence or willfulness, failed to meet their obligations.[3]

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information. Recent technology may have rendered USCIS's prior FOIA practices unreasonable. In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable to rely exclusively on custodian-driven searches.[4] Furthermore, agencies that have adopted the National Archives and Records Agency (NARA) Capstone program, or similar policies, now maintain emails in a form that is reasonably likely to be more complete than individual custodians' files. For example, a custodian may have deleted a responsive email from his or her email program, but USCIS's archiving tools would capture that email under Capstone. Accordingly, the Requestors insist that USCIS use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. Requestors are available to work with you to craft appropriate search terms. However, custodian searches are still required; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

If any records responsive or potentially responsive to the Request have been destroyed, our Request includes, but is not limited to, any and all records relating or referring to the destruction of those records. This includes, but is not limited to, any and all records relating or referring to the events leading to the destruction of those records.

With respect to the form of production, CAIR-CT and MRNY request that responsive electronic records be provided electronically in their native file format, if possible, except that aggregated data be provided in searchable Microsoft Excel spreadsheets, if possible. *See* 5 U.S.C. § 552(a)(3)(B). Alternatively, CAIR-CT and MRNY request that the records be provided

---

[3] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016) ("The Government argues that because the agency had a policy requiring [the official] to forward all of his emails from his [personal] account to his business email, the [personal] account only contains duplicate agency records at best. Therefore, the Government claims that any hypothetical deletion of the [personal account] emails would still leave a copy of those records intact in [the official's] work email. However, policies are rarely followed to perfection by anyone. At this stage of the case, the Court cannot assume that each and every work related email in the [personal] account was duplicated in [the official's] work email account." (citations omitted)).

[4] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

Freedom of Information Act Request
April 12, 2017

electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

## II.    <u>Application for Expedited Processing</u>

The Requestors ask for expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the information, as defined by the statute, because the Requestors are organizations "primarily engaged in disseminating information" and have an "urgency to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). The Requestors also independently seek expedited processing because the records involve "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(iv).

   *A.    Requestors are organizations primarily engaged in disseminating information in order to inform the public about actual or alleged government activity*

Dissemination of information to the public is a critical and substantial component of Requestors' mission and work. The Requestors distribute information and research they gather to the public through various publications, educational sessions, and electronic communications, thus qualifying them as organizations "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also Am. Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (explaining that non-profit public-interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" is "primarily engaged in disseminating information").

**CAIR-CT** is a non-profit 501(c)(3) organization dedicated to presenting an Islamic perspective on issues of importance to the American public. CAIR-CT's mission is to enhance the understanding of Islam, encourage dialogue, protect civil liberties, empower American Muslims, and build coalitions that promote justice and mutual understanding. CAIR works to promote civil rights by mediating on behalf of Muslims who have experienced discrimination, helps elected officials to understand policy issues related to Islam and Muslims, and monitors legislation and government activities. As the Connecticut chapter of a national organization, CAIR-CT specifically works on behalf of Connecticut's more than 150,000 Muslims.

As part of its policy advocacy and monitoring of news media and public policy, CAIR-CT publishes news and alerts regarding issues affecting the Muslim community, including "Action Alerts" and press releases regarding legal issues affecting Muslims.[5] CAIR-CT also

---

[5] *See, e.g., CAIR Community Alert: Khatibs Urged to Address Post-Election Concerns in Muslim Community During Jummah Prayers*, COUNCIL ON AMERICAN-ISLAMIC RELATIONS (Nov. 11, 2016), http://www.cair.com/press-center/american-muslim-news/13883-cair-community-alert-khatibs-urged-to-address-post-election-concerns-in-muslim-community-during-jummah-prayers.html; *CAIR Asks GOP to Repudiate Islamophobic Remarks of Delaware Lawmaker Who Walked Out Before Muslim Prayer*, COUNCIL ON AMERICAN-ISLAMIC RELATIONS (Apr. 6, 2017),

Freedom of Information Act Request
April 12, 2017

conducts trainings and educational workshops addressing interactions with law enforcement and other government officials, including regular trainings at local masaajid and Islamic centers throughout Connecticut aimed at educating people on issues affecting the Muslim community. CAIR-CT also works with local and national media to ensure that an accurate image of Islam and Muslims is presented to the American public.

**MRNY** is a non-profit 501(c)(3) organization dedicated to empowering immigrant, Latino, and working-class communities in New York City. As an integral part of its mission, MRNY educates the public about civil-rights issues affecting working-class and immigrant communities through electronic newsletters, reports, fact sheets, trainings, curricula, classes, and other educational and informational material. MRNY also disseminates information and analyses on pending and proposed legislation, engages in public policy advocacy, and mobilizes community members to advocate to their legislators.

As part of its organizing and public-policy advocacy efforts, MRNY conducts research on issues affecting the community it serves and conducts substantial outreach to policymakers and the media. MRNY regularly conducts research and publishes reports, fact sheets, and other informational material on issues important to the immigrant, Latino, and working class communities it serves. MRNY also conducts educational workshops on the risks and benefits of applying for renewed Deferred Action for Childhood Arrivals ("DACA") applications. Additionally, MRNY frequently releases media statements, and disseminates information about local, state, and national issues to its thousands of members and to the public at large.

MRNY also directly educates members of the New York community through classes and trainings and may find information obtained through this request useful in its educational activities. Among other activities, MRNY: (1) conducts "Know Your Rights" trainings on subjects such as what to do when encountering law enforcement, with the goal of increasing the community's ability to enforce their own rights while building their practical knowledge of the laws that affect them most; (2) educates thousands of immigrants and their families about deportation relief options and available services; and (3) provides comprehensive skills training to hundreds of low-income New Yorkers each year on leadership skills, media advocacy, civics, community and electoral organizing, and strategic policy advocacy.

B.     *The records sought are urgently needed to inform the public about actual or alleged government activity*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). The question of discriminatory policies being applied to individuals perceived to be Muslims or members of other targeted groups has been the subject of extensive media coverage in almost every major media outlet. In addition to numerous lawsuits,[6] the public has expressed its concern and engagement with this issue through

---

http://www.cair.com/press-center/press-releases/14259-cair-asks-gop-to-repudiate-islamophobic-remarks-of-delaware-lawmaker-who-walked-out-before-muslim-prayer.html.
[6] *See, e.g., Legal Challenges Mount Against Trump's Travel Ban*, N.Y. TIMES (Jan. 30, 2017), https://www.nytimes.com/2017/01/30/us/legal-challenges-mount-against-trumps-travel-ban.html.

Freedom of Information Act Request
April 12, 2017

numerous large protests.[7] Recently, discriminatory admissions of refugees and grants of visa petitions have also been the subject of coverage in the media.[8]

On January 27, 2017, President Donald J. Trump issued an executive order that indefinitely blocked refugees from Syria from entering the United States, barred all refugees for 120 days, and prohibited individuals from seven predominantly Muslim countries – Iran, Iraq, Libya, Somalia, Sudan, Syria and Yemen – from entering the United States for 90 days.[9] By the following day, January 28, 2017, CBP officials across the country had detained an estimated 100 to 200 individuals at airports throughout the United States.[10] Soon thereafter, Judge Donnelly of the Eastern District of New York issued a nationwide order in *Darweesh v. Trump*, that prohibited the government from removing any detained travelers from the seven banned countries who had been legally authorized to enter the United States.[11] Meanwhile, protests erupted at airports across the country as volunteer attorneys stood by to assist detained travelers and their families.[12]

Several days later, Judge Robart of the Western District of Washington issued a nationwide order suspending enforcement of President Trump's executive order.[13] That decision was affirmed by the Ninth Circuit.[14] In response, President Trump issued a second executive

---

[7] *See, e.g., Thousands Protest Against Trump Travel Ban in Cities and Airports Nationwide*, GUARDIAN (Jan. 29, 2017), https://www.theguardian.com/us-news/2017/jan/29/protest-trump-travel-ban-muslims-airports.

[8] *See, e.g.,* Atossa Araxia Abrahamian, *Before the Refugee Ban*, ATLANTIC (Mar. 22, 2017), https://newrepublic.com/article/141179/life-before-trump-muslim-refugee-ban; Emma Cott, Brent McDonald, & Taige Jensen, *Caught Up in Travel Ban, a Family Reunites*, N.Y. TIMES (Mar. 16, 2017), https://www.nytimes.com/2017/03/16/us/travel-ban-family-reunites.html; James Cavallaro & Rebecca Mears, *Trump's Travel Ban Violates International Treaties*, N.Y. DAILY NEWS (Mar. 15, 2017), http://www.nydailynews.com/opinion/trump-travel-ban-violates-international-treaties-article-1.2998484; Zack Beauchamp, *Trump Says His Refugee Ban Is About Protecting America. It's Really About Islamophobia*, VOX (Jan. 28, 2017), http://www.vox.com/world/2017/1/28/14424940/trump-refugee-ban-muslims-islamophobia. https://www.theatlantic.com/politics/archive/2017/02/papers-please/517887/.

[9] Exec. Order No. 13,769, 82 Fed. Reg. 8977 (Feb. 1, 2017).

[10] *See, e.g.,* Michael D. Shear *et al., Judge Blocks Trump Order on Refugees Amid Chaos and Outcry Worldwide,* N.Y. TIMES (Jan. 28, 2017), https://www.nytimes.com/2017/01/28/us/refugees-detained-at-us-airports-prompting-legal-challenges-to-trumps-immigration-order.html.

[11] Decision and Order, *Darweesh v. Trump*, No. 17 Civ. 480 (AMD) (E.D.N.Y. Jan. 28, 2017), https://www.aclu.org/legal-document/darweesh-v-trump-decision-and-order.

[12] *See, e.g.,* Peter Baker, *Travelers Stranded and Protests Swell Over Trump Order*, N.Y. TIMES (Jan. 29, 2017), https://www.nytimes.com/2017/01/29/us/politics/white- house-official-in-reversal-says-green-card-holders-wont-be-barred.html.

[13] Temporary Restraining Order, *Washington v. Trump*, No. C17-0141JLR (W.D. Wash. Feb. 3, 2017), https://www.clearinghouse.net/chDocs/public/IM-WA-0029-0005.pdf.

[14] Order, *Washington v. Trump*, No. 17-35105 (9th Cir. Feb. 9, 2017), https://www.clearinghouse.net/chDocs/public/IM-WA-0029-0067.pdf.

Freedom of Information Act Request
April 12, 2017

order, revoking the first executive order, banning travel from certain predominantly Muslim countries, and suspending the refugee program.[15] Prior to its taking effect on March 16, 2017, federal district courts in Hawaii and Maryland blocked the order's sections affecting travel and refugees, citing that the order was likely motivated by an intent to discriminate against Muslims.[16]

Accordingly, the Requestors seek to supplement the public record and to inform the public about USCIS's policies and practices in subjecting individuals to heightened questioning and screening procedures. Extensive media coverage and public protests demonstrate that this is a topic of great import and general concern, about which it is urgent that the public remain informed. *See* 6 C.F.R. § 5.5(e)(3) (noting that "existence of numerous articles published on a given subject" can support urgency to inform public for purposes of expedited processing).

C.    *The records sought relate to a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence*

The records sought should also be processed on an expedited basis because they are related to a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence. *See* 6 C.F.R. § 5.5(e)(1)(iv). Extensive news reporting has been dedicated to the application of heightened screening procedures to individuals perceived by federal officers as belonging to targeted groups. *See supra* Section II.B. Further, because of perceived discriminatory application of screening procedures, questions have been raised about the integrity of the president himself.[17] These "possible questions," in and of themselves, render expedited processing appropriate. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 31 (D.D.C. 2004) (under identical expedited processing provision in Justice Department regulation, government integrity was implicated where "suggestions of possible violations of privacy rights" were raised by civil rights groups, members of Congress, and private citizens (citing 28 C.F.R. § 16.5(d)(1)(iv))).

Given the foregoing, the Requestors have satisfied the requirements for expedited processing of this Request on two independent grounds.

## III.    Application for Waiver or Limitation of Fees

The Requestors request a waiver of document search, review, and duplications fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or

---

[15] Exec. Order No. 13,780, 82 Fed. Reg. 13209 (Mar. 6, 2017).

[16] Matt Zapotosky, *Second Federal Judge Blocks Revised Trump Travel Ban*, Wash. Post (Mar. 16, 2017), https://www.washingtonpost.com/local/social-issues/second-federal-judge-blocks-revised-trump-travel-ban/2017/03/16/dc47cd1e-0a2a-11e7-93dc-00f9bdd74ed1_story.html?utm_term=.0889b847b191.

[17] *See* Benjamin Wittes & Quinta Jurecic, *What Happens When We Don't Believe the President's Oath?*, Lawfare (Mar. 3, 2017), https://www.lawfareblog.com/what-happens-when-we-dont-believe-presidents-oath.

Freedom of Information Act Request
April 12, 2017

activities of the government and is not primarily in the commercial interest of the requester." 5
U.S.C. § 552(a)(4)(A)(iii). The Requestors also request waiver of search and review fees on the
grounds that the Requestors qualify as "representatives of the news media" and the records are
not sought for commercial use. *Id.* § 552(a)(4)(A)(ii)(II).

    A.    *The Request is likely to contribute significantly to public understanding of the
operations or activities of the government and is not primarily in the commercial
interest of Requestors*

        As discussed above, widespread media coverage and public demonstrations underscore
the continued public interest in the records sought through this Request. While much coverage
has been dedicated to President Trump's executive orders, there has been relatively less attention
devoted to the particular policies and practices USCIS officers have adopted to implement the
orders, or to effectuate the immigration-related policy statements of the Trump Administration.
The records sought will contribute significantly to the public's understanding of the
government's operations by providing insight into whether USCIS is specifically targeting
individuals of particular religious or ethnic groups as a matter of policy or if USCIS is engaging
in a pattern of discrimination against particular religious or ethnic groups.

        The Requestors are not filing this request to further their commercial interests. Any
information disclosed to the Requestors as a result of this FOIA request will be available to the
public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending the
FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress
amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial
requesters." (quotation marks omitted)).

    B.    *The Requestors are representatives of the news media and the records are not sought
for commercial use*

        The Requestors also request a waiver of search and review fees on the grounds that they
qualify as "representative[s] of the news media" and the records are not sought for commercial
use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). As demonstrated above, the Requestors meet the statutory
definition of a "representative of the news media" because they are entities "that gather[]
information of potential interest to a segment of the public, [use their] editorial skills to turn the
raw materials into a distinct work, and distribute[] that work to an audience." *Id.* §
552(a)(4)(A)(ii)(III). In construing the term, "[i]t is critical that the phrase 'representative of the
news media' be broadly interpreted if the act is to work as expected." *Nat'l Sec. Archive v. U.S.
Dep't of Defense*, 880 F.2d 1381, 1386 (D.C. Cir. 1989) (citations omitted). Here, for example,
MRNY releases hundreds of press advisories each year, which distill information the
organization has gathered and are disseminated to other news organizations and interested parties.
The media advisories are also made publicly available on MRNY's website. *See Press
Advisories*, Make the Road New York, http://www.maketheroadny.org/archive_type.php?ID=1
(Mar. 26, 2017).MRNY also publishes numerous policy reports to the public.[18]

---

[18] *See, e.g., The $ 3.4 Trillion: The Cost of Mass Incarceration and Criminalization and How
Justice Reinvestment Can Build a Better Future for All*, Make the Road New York et al. (Oct. 17,

Freedom of Information Act Request
April 12, 2017

Moreover, courts have found other organizations whose missions, functions, publications, and public education activities are similar in kind to the Requestors' to be "representatives of the news media" as well. *See, e.g., Serv. Women's Action Network v. U.S. Dep't of Defense*, 888 F. Supp. 2d 282, 287-88 (D. Conn. 2012) (finding that requestors, including organization that "empower[ed] current service women and female veterans through advocacy initiatives and community programs," were representatives of news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Defense*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003) (finding non-profit public-interest group that disseminated electronic newsletter and published books was "representative of the news media" for purposes of the FOIA); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (finding Judicial Watch, self-described as "public interest law firm," to be news-media requester). In each of these cases, the court has found these organizations to be "representatives of the news media" even though the requesting organizations also engage in litigation and advocacy activities beyond their dissemination of information and public education activities.

*      *      *

Pursuant to 5 U.S.C. § 552(a)(6)(E)(ii)(I), the Requestors expect a determination regarding expedited processing within ten days. If this request for records is denied in whole or in part, please justify all deletions and omissions by reference to specific FOIA exemptions. We expect USCIS to release all segregable portions of otherwise exempt material. For example, we expect USCIS to redact names of individuals for whom privacy waivers are not enclosed, if such redaction is required by the Privacy Act or other law, and to release any otherwise disclosable records as redacted.

We reserve the right to appeal any decision relating to this FOIA request, including, but not limited to, the decision to withhold any information, or to deny expedited processing, or to deny a waiver or reduction of fees.

Thank you in advance for your timely consideration of this request. Please furnish records as soon as they are identified to the undersigned at:

Muneer Ahmad

---

2016), http://www.maketheroadny.org/report.php?ID=4355; *Where's My Seat? How School Overcrowding Disproportionately Impacts Immigrant Communities in New York City*, Make the Road New York (Nov. 24, 2015), http://www.maketheroadny.org/report.php?ID=4178; *Lost in Translation: Report Card on Nassau County Agencies' Compliance with Language Access Executive Orders*, Make the Road New York (Aug. 18, 2014), http://www.maketheroadny.org/report.php?ID=3649; *Consumer Abuse and Environmental Hazards in New York City's Car Wash Industry*, Make the Road New York (Dec. 12, 2013), http://www.maketheroadny.org/report.php?ID=3275; *The Committee for Better Banks Report: The State of the Bank Employee on Wall Street*, Make the Road New York (Dec. 5, 2013), http://www.maketheroadny.org/report.php?ID=3201.

Freedom of Information Act Request
April 12, 2017

> Jerome N. Frank Legal Services Organization
> Yale Law School
> 127 Wall Street
> New Haven, CT 06511

We certify that the information provided supporting the request for expedited processing is true and correct to the best of our knowledge and belief.

Sincerely,

Muneer Ahmad
Jerome N. Frank Legal Services Organization
Yale Law School
127 Wall Street
New Haven, CT 06511

Adam Bradlow
David Chen
Jordan Laris Cohen
Susanna D. Evarts
Amit Jain
Clare Kane
Aaron Korthuis
Zachary Manfredi
Joseph Meyers
Victoria Roeck
*Law student interns*

# **EXHIBIT**
# **D**

**U.S. Department of Homeland Security**
Washington, DC 20528



April 20, 2017

<u>**SENT VIA E-MAIL TO:**</u> ███████████████

Muneer I. Ahmad
The Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520

Re: **2017-HQFO-00673**

Dear Mr. Ahmad:

This letter acknowledges receipt of your April 12, 2017, Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), for 1. Any and all policy guidance, directives, memoranda, operational resources, or other similar records created, modified, sent, received, and/or collected on or after November 8, 2016 that relate or in any way refer to any of the following: a. Policies, procedures, and practices governing the adjudications of visa petitions, applications for waivers of grounds of inadmissibility, travel document applications, refugee/asylum applications, or applications for refugees for waivers of grounds of inadmissibility, including but not limited to the grounds and/or criteria for granting, denying, holding, and/or leaving unadjudicated visa petitions, waiver applications, travel document applications, refugee applications, or refugee waiver applications. b. Policies, procedures, and practices governing revocation, notification of intent to revoke, and/or termination of approved visa petitions, waiver applications, travel document applications, refugee applications, or refugee waiver applications, including but not limited to the grounds and/or criteria for revoking approved visa petitions, waiver applications, travel document applications, refugee applications, or refugee waiver applications. c. Policies, procedures, and practices related to the memorandum dated March 6, 2017, entitled, "Implementing Immediate Heightened Screening and Vetting of Applications for Visas and Other Immigration Benefits, Ensuring Enforcement of All Laws for Entry Into the United States, and Increasing Transparency Among Departments and Agencies of the Federal Government and for the American People," published at 82 Fed. Reg. 16,279. d. Case-by-case waivers of suspension of refugee admissions pursuant to Section 5(e) of Executive Order No. 13,769, entitled, "Protecting the Nation From Foreign Terrorist Entry Into the United States," 82 Fed. Reg. 8,977 (Jan. 27, 2017) ("EO 1"), including but not limited to records concerning: i. The grounds for such waivers, and ii. Guidance to USCIS officials and staff members concerning the criteria for eligibility for such waivers. e. Case-by-case waivers of suspension of refugee admissions pursuant to Section 6(c) of Executive Order No. 13,780, entitled, "Protecting the Nation From Foreign Terrorist Entry Into the United States," 82 Fed. Reg. 13,209 (Mar. 6, 2017) ("EO 2"), including but not limited to records concerning: i. The grounds for such waivers, and ii. Guidance to USCIS officials and staff members concerning the criteria for eligibility for such waivers. f. Policies, procedures, and practices related to case-by-

case determinations or waivers in the national interest to issue visas or other immigration benefits pursuant to Section 3(g) of EO 1 and/or Section 3( c) of EO 2. g. Policies, procedures, and practices related to the consideration of rescinding the exercises of authority permitted by§ 212(d)(3)(B) of the INA, 8 U.S.C. § l 182(d)(3)(B), relating to the terrorism grounds of inadmissibility, as well as any related implementing directives or guidance, pursuant to Section 6 of EO 1 and/or Section 7 of EO 2. h. Policies, procedures, and practices related to the exercises of authority permitted by§ 212(d)(3)(B) of the INA, 8U.S.C.§1182(d)(3)(B), relating to the terrorism grounds of inadmissibility. i. All records related to planned or scheduled circuit rides, including but not limited to their location, timing, and interviewing priorities, etc. This office received your request on April 19, 2017.

As it relates to your request for expedited processing and fee waiver, your request is granted.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request.  Consistent with 6 C.F.R. § 5.5(a) of the DHS FOIA regulations, the Department processes FOIA requests according to their order of receipt. Although DHS' goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances.  As your request seeks documents that will require a thorough and wide-ranging search, DHS will invoke a 10-day extension for your request pursuant to 5 U.S.C. § 552(a)(6)(B).  If you would like to narrow the scope of your request, please contact our office.  We will make every effort to comply with your request in a timely manner.

We have queried the appropriate component(s) of DHS for responsive records.  If any responsive records are located, they will be reviewed for determination of releasability.  Please be assured that one of the processors in our office will respond to your request as expeditiously as possible.  We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2017-HQFO-00673**.  Please refer to this identifier in any future correspondence.  To check the status of your FOIA request, you may contact this office at 1-866-431-0486 or 202-343-1743, or you may check the status of your request online at http://www.dhs.gov/foia-status.

Sincerely,

LaEbony Livingston
FOIA Program Specialist

# **EXHIBIT**
# **E**

**Subject:**   Freedom of Information Act Request
**Date:**   Thursday, April 20, 2017 at 4:23:16 PM Eastern Daylight Time
**From:**   Horn, Dawn D
**To:**   Ahmad, Muneer
**Attachments:** image001.jpg

Mr. Ahmad
We are in receipt of your FOIA request. I am contacting you in order to prefect your request. Your request states that you are requesting policies, practices, training material, communications, and informal understandings relating to the criteria and /or grounds to be considered during visa petition adjudications, revocations and consideration of refugee/asylum applications including case-by-case waivers pursuant to recent Executive Orders. It is my understanding that you wish to receive this information as it relates to asylum/refugee cases affected by the Executive Orders specifically. This information is limited to only information between November 8, 2016 and the date we received your request. Emails and text communications to and from the individuals you listed within in USCIS is to only include communications regarding the Executive Orders and how they pertain to refugee/asylum applications affected during the above stated time period. Please define the terms "case-by-case waivers" and "travel document applications" so we can search for responsive records. Finally Item #5 is requesting information that will not be available until the FOIA process is complete. We suggest submitting this item as a separate request upon the completion of your current FOIA request. I hope this is agreeable and look forward to your response.

*Dawn D. Horn*

████████████
Government Information Specialist
FOIA/PA, Significant Interest Group (SIG)
U.S. Citizenship and Immigration Services
Immigration Records and Identity Services Directorate
National Records Center
150 Space Center Loop
Lee's Summit, MO 64064
Office Phone: ██████████████
FAX: ████████
Telework Monday, Tuesday, Wednesday, & Friday

**WARNING: This document is FOR OFFICIAL USE ONLY (FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval from the originator.**

# **EXHIBIT**

# **F**

# Re: [Darweesh] Freedom of Information Act Request

Thu 4/27/2017 4:32 PM

To Horn, Dawn D < ████████████████ >;

📎 1 attachments (10 KB)

ATT00001.txt;

Dear Ms. Horn,

Thank you for contacting us. To clarify, our request for information is not limited to refugee/asylum applications affected by the Executive Orders, but to *all* records concerning adjudication or consideration of visa petitions, revocations, refugee applications, waiver applications, and travel document applications during the specified time period. The same applies to our request for email, text, and electronic communications, which reaches communications concerning all such categories of agency action or policy, not just refugee/asylum applications or the Executive Orders.

The temporal restriction you cite (on or after November 8, 2016) is correct, except with regard to item 4. That item requests records sufficient to show certain data points on or after November 8, 2015, rather than 2016.

"Case-by-case waivers" refers to any waivers of the suspension of refugee admissions in Section 5(e) of the January 27, 2017 executive order, published at 82 Federal Register 8,977, or Section 6(c) of the March 6, 2017 executive order, published at 82 Federal Register 13,209. "Travel document applications" include applications for immigrant and non-immigrant visas, Advance Parole, and other documents that permit noncitizens to enter or re-enter the United States.

Regarding item 5, we request that you produce all responsive records that exist at the time you send us a final response to the request as a whole. Thank you for your understanding.

Sincerely,

Muneer Ahmad

Muneer I. Ahmad

Clinical Professor of Law

Yale Law School

P.O. Box 209090

New Haven, CT 06520-9090

tel. ███████

fax ███████

email: ███████

PRIVILEGED AND CONFIDENTIAL

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure.   If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise.  Instead, please notify me immediately by return e-mail (including the original message in your reply) and by telephone and then delete and discard all copies of the e-mail.

---

**From:** "Horn, Dawn D" ███████
**Date:** Thursday, April 20, 2017 at 4:23 PM
**To:** "Ahmad, Muneer" ███████
**Subject:** Freedom of Information Act Request



Mr. Ahmad

We are in receipt of your FOIA request. I am contacting you in order to prefect your request. Your request states that you are requesting policies, practices, training material, communications, and informal understandings relating to the criteria and /or grounds to be considered during visa petition adjudications, revocations and consideration of refugee/asylum applications including case-by-case waivers pursuant to recent Executive Orders. It is my understanding that you wish to receive this information as it relates to asylum/refugee cases affected by the Executive Orders specifically. This information is limited to only information between November 8, 2016 and the date we received your request. Emails and text communications to and from the individuals you listed within in USCIS is to only include communications regarding the Executive Orders and how they pertain to refugee/asylum applications affected during the above stated time period. Please define the terms "case-by-case waivers" and "travel document applications" so we can search for responsive records. Finally Item #5 is requesting information that will not be available until the FOIA process is complete. We suggest submitting this item as a separate request upon the completion of your current FOIA request. I hope this is agreeable and look forward to your response.

*Dawn D. Horn*

███████████████

Government Information Specialist

FOIA/PA, Significant Interest Group (SIG)

U.S. Citizenship and Immigration Services

Immigration Records and Identity Services Directorate

National Records Center

150 Space Center Loop

Lee's Summit, MO 64064

Office Phone: ████████████

FAX: ██████████

Telework Monday, Tuesday, Wednesday, & Friday

**WARNING: This document is FOR OFFICIAL USE ONLY (FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval from the originator.**

# EXHIBIT

# G

## RE: FOIA request

Gillispie, Anna E < ██████████████████ >

Wed 6/21/2017 7:21 AM

To: Amit Jain < ████████████ >;

Hi, Amit. Due to the volume of the request and the multiple times we've had to reach out to Mr. Ahmad, I can't give an exact date when the records will be produced. You can check the status of your request at: https://egov.uscis.gov/foiawebstatus/

Thank you,

*Anna Gillispie*
Government Information Specialist
FOIA/PA Division Significant Interest Group (SIG)
National Records Center
150 Space Center Loop, Lee's Summit, MO 64064
Immigration Records and Identity Services (IRIS)
████████████
Fax number: ███████████
Office: Wednesday and Thursday
████████████████

-

**From:** Amit Jain [mailto██████████████]
**Sent:** Monday, June 19, 2017 3:30 PM
**To:** Ahmad, Muneer; Gillispie, Anna E
**Cc:** Michael Wishnie; Ruben Loyo; ████████████████
**Subject:** Re: FOIA request

Dear Ms. Gillispie,

I write on behalf of Muneer Ahmad to follow up on his message below. Can you provide a date certain for the production of responsive documents?

Thanks,
Amit Jain

Amit Jain
Law Student Intern
Jerome N. Frank Legal Services Organization
Yale Law School
████████████

# Re: [Darweesh] FOIA request

██████████████████████████ on behalf of

**Ahmad, Muneer** ███████████████████████

Wed 6/7/2017 5:52 PM

To: Gillispie, Anna E ████████████████ ;

Cc: Michael Wishnie ██████████████████ ; Ruben Loyo ████ **Text** ██████████████████ ; ████████████████████ ;

📎 1 attachments (10 KB)

ATT00001.txt;

Ms. Gillispie,

On your further questions:

We are not seeking drafts subject to the deliberative process privilege under FOIA.

We intend our request to encompass all policies in place as of November 8, 2016, regardless of when they were created.

Are you able to give us an update on when we can expect responsive documents to be produced?

Many thanks,

Muneer Ahmad

Muneer I. Ahmad

Clinical Professor of Law

Yale Law School

P.O. Box 209090

New Haven, CT 06520-9090

tel. ████████████

fax ██████████████

email: ██████████████

PRIVILEGED AND CONFIDENTIAL

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise. Instead, please notify me immediately by return e-mail (including the original message in your reply) and by telephone and then delete and discard all copies of the e-mail.

**From:** "Gillispie, Anna E" ███████████████████
**Date:** Wednesday, June 7, 2017 at 11:28 AM
**To:** "Ahmad, Muneer" ██████████████████
**Subject:** RE: FOIA request

Hi, Mr. Ahmad. I have 2 more questions for you from another contact of mine.

#2 procedures and practices do we include drafts or just what we are using regardless of draft or not?

Do we only include new policies, etc. developed/finalized during the FOIA timeframes (i.e. does he want everything that was in place during that period). I think this questions is asking whether or not you want the policies, etc. that were in place on November 8, 2016 regardless of when they were created.

Thanks,

*Anna Gillispie*

Government Information Specialist

FOIA/PA Division Significant Interest Group (SIG)
National Records Center

150 Space Center Loop, Lee's Summit, MO 64064

Immigration Records and Identity Services (IRIS)

████████████████████

Fax number: █████████████

Office: Wednesday and Thursday

████████████████████

**From:** Ahmad, Muneer ███████████████████████████
**Sent:** Wednesday, June 07, 2017 10:13 AM
**To:** Gillispie, Anna E
**Cc:** ███████████████; Michael Wishnie; Ruben Loyo
**Subject:** Re: FOIA request

Thanks very much.

Muneer I. Ahmad

Clinical Professor of Law

Yale Law School

P.O. Box 209090

New Haven, CT 06520-9090

tel. █████████████

fax █████████████

email: █████████████████

PRIVILEGED AND CONFIDENTIAL

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise. Instead, please notify me immediately by return e-mail (including the original message in your reply) and by telephone and then delete and discard all copies of the e-mail.

---

**From:** "Gillispie, Anna E" ████████████████████████
**Date:** Wednesday, June 7, 2017 at 11:05 AM
**To:** "Ahmad, Muneer" ████████████████████
**Subject:** RE: FOIA request

Mr. Ahmad,

I appreciate you getting back with me. I will forward your answers to the program office.

Thank you,

*Anna Gillispie*

Government Information Specialist

FOIA/PA Division Significant Interest Group (SIG)
National Records Center

150 Space Center Loop, Lee's Summit, MO 64064

Immigration Records and Identity Services (IRIS)

███████████████

Fax number: ███████████

Office: Wednesday and Thursday

████████████████

---

**From:** Ahmad, ████████████████████████████
**Sent:** Wednesday, June 07, 2017 10:01 AM
**To:** Gillispie, Anna E
**Cc:** ██████████████████; Michael Wishnie; Ruben Loyo
**Subject:** Re: FOIA request

Dear Ms. Gillispie,

Thank you for reaching out. Here are responses to your colleague's questions:

1. This language is intended as a summary of the more detailed request in Part I, not a separate request for records.
2. Under item 1, we are requesting any noted records sent or received on or after November 8, 2016, including records that were generated before November 8, 2016 but sent or received on or after that date.
3. Under item 1, we are requesting all records constituting "policy guidance, directives, memoranda, operational resources, or other similar records" on the listed topics, including informal policies. We expect that this might include some emails referencing specific cases, but only those that are "similar" to "policy guidance, directives, memoranda, [or] operational resources."
4. As with answer #2 above, under item 2, we are requesting any noted records sent or received on or after November 8, 2016, including records that were generated before November 8, 2016 but sent or received on or after that date.

Sincerely,

Muneer Ahmad

Muneer I. Ahmad

Clinical Professor of Law

Yale Law School

P.O. Box 209090

New Haven, CT 06520-9090

tel. ███████████

fax ███████████

email: ███████████

PRIVILEGED AND CONFIDENTIAL

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure.  If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise.  Instead, please notify me immediately by return e-mail (including the original message in your reply) and by telephone and then delete and discard all copies of the e-mail.

---

**From:** "Gillispie, Anna E" ███████████
**Date:** Wednesday, May 31, 2017 at 12:04 PM
**To:** "Ahmad, Muneer" ███████████
**Subject:** FOIA request

Mr. Ahmad,

I am from the USCIS FOIA office and I am contacting you regarding your request dated April 12, 2017. A colleague of mine who is searching for records has a few questions regarding this case so I am reaching out for that information.

Here are her questions:

Top of page 2 of the letter: Is the requestor seeking formal guidance, memos or standard operating procedures on the noted topic?  If not, (a) what exactly is meant by communications? (b) Is the requester seeking every email that references the noted subjects? (c) What is meant by informal understanding?

Under Section I, Item 1: the terms "sent" and "received" create confusion to the request.  For instance, does the requestor only want those noted formal records that have been created/modified and then sent/received since November 8 or do they want ANY noted records that existed prior to November 8 and then were sent/received after November 8 without being modified in any way? I'm reading this section to request records related to formal guidance, policies, etc.

created/modified after November 8, 2016, and NOT for policies that existed prior to November 8, 2016 and then were subsequently "sent" by email.

Under Section I, does the requestor want every email on the noted topics, including case specific emails? Or does the requestor want emails related to only formal guidance, policies, memos etc. on the topics.

Section II – same issue with the sent/received reference.


Thank you,



*Anna Gillispie*

Government Information Specialist

FOIA/PA Division Significant Interest Group (SIG)
National Records Center

150 Space Center Loop, Lee's  Summit, MO 64064

Immigration Records and Identity Services (IRIS)

██████████████████

Fax number:  ████████████

Office: Wednesday and Thursday

██████████████████

# **<u>EXHIBIT</u>**
# **<u>H</u>**

# The Jerome N. Frank Legal Services Organization

### YALE LAW SCHOOL

April 12, 2017

*By FedEx; Return Receipt Requested*

Office of Information Programs and Services
A/GIS/IPS/RL
U.S. Department of State
Washington, DC 20522-8100
Facsimile: (202) 261-8579

**Re:**   **Request Under Freedom of Information Act**
      **(Expedited Processing & Fee Waiver / Limitation Requested)**

To Whom It May Concern:

   This letter constitutes a request for records made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and its relevant implementing regulations, 22 C.F.R. § 171.10 *et seq.*, by the Council on American-Islamic Relations – Connecticut ("CAIR-CT"), and Make the Road New York ("MRNY") (hereinafter collectively referred to as "Requestors").

   The Requestors make this request for records related to the policy, procedures, and practices of United States Department of State ("DOS") with respect to the screening and visa issuances of individuals applying abroad. The Requestors, non-profit organizations serving immigrant communities, are concerned that in recent months, DOS has been targeting actual or perceived members of particular religious, ethnic, racial, and/or other groups for special treatment in the process of screening, inspecting, questioning, and processing individuals applying for a visa at U.S. consulates or other processing centers abroad. Given the widespread media coverage of President Trump's immigration policies and executive orders, as well as numerous demonstrations that have been held to protest these policies, the Requestors believe these records will contribute significantly to public understanding of the operations or activities of the government.

   The Requestors are concerned that such targeting may result both from policies, procedures, or directives issued by supervising officials and from the discretion of individual officers. As a result, Requestors seek two types of information, as further detailed in Part I:

1. Policies, practices, training material, communications, and informal understandings related to the criteria and/or grounds to be considered during visa application adjudications, visa revocations, and consideration of refugee applications, including case-by-case waivers pursuant to recent Executive Orders.

2. Numerical data and statistics showing the number of individuals who have been subject to additional scrutiny, visa revocations, waivers of enforcement, or unfavorable treatment, disaggregated by nationality of individual and other demographic characteristics. Requestors do not seek records of individuals processed by DOS, but rather aggregated

Freedom of Information Act Request
April 12, 2017

data or reports summarizing total numbers, disaggregated by nationality and other
demographic characteristics.

## I.  Requested Records[1]

1. Any and all policy guidance, directives, memoranda, operational resources, or other
   similar records created, modified, sent, received, and/or collected on or after November
   8, 2016, which relate or refer in any way to any of the following:

   a. Policies, procedures, and practices governing visa applications or adjudications,
      including but not limited to the grounds and/or criteria for granting visa
      interviews and granting, denying, holding, and/or leaving unadjudicated visa
      applications.
   b. Policies, procedures, and practices governing revocation of approved visas,
      including but not limited to the grounds and/or criteria for revoking approved
      visas.
   c. Policies, procedures, and practices related to the memorandum dated March 6,
      2017, entitled, "Implementing Immediate Heightened Screening and Vetting of
      Applications for Visas and Other Immigration Benefits, Ensuring Enforcement of
      All Laws for Entry Into the United States, and Increasing Transparency Among
      Departments and Agencies of the Federal Government and for the American
      People," published at 82 Fed. Reg. 16,279.
   d. Case-by-case waivers of suspension of refugee admissions pursuant to Section
      5(e) of Executive Order No. 13,769 entitled, "Protecting the Nation From Foreign
      Terrorist Entry Into the United States," (Jan. 27, 2017) ("EO 1"), including but
      not limited to records concerning:
      i. The grounds for such waivers, and
      ii. Guidance to DOS officials and staff members concerning the criteria for
          eligibility for such waivers.
   e. Case-by-case waivers of suspension of refugee admissions pursuant to Section
      6(c) of Executive Order No. 13,780 entitled, "Protecting the Nation From Foreign
      Terrorist Entry Into the United States," 82 Fed. Reg. 13,209 (Mar. 6, 2017) ("EO
      2"), including but not limited to records concerning:
      i. The grounds for such waivers, and
      ii. Guidance to DOS officials and staff members concerning the criteria for
          eligibility for such waivers.

---

[1] The term "records" as used herein includes, but is not limited to: text communications between
phones or other electronic devices (including, but not limited to, communications sent via SMS
or other text, Blackberry Messenger, iMessage, WhatsApp, Facebook, Signal, Gchat, Twitter
direct message, or similar form of communication); e-mails; images, video, and audio recorded
on cell phones; voicemail messages; social-media posts; instructions; directives; guidance
documents; formal and informal presentations; training documents; bulletins; alerts; updates;
advisories; reports; legal and policy memoranda; contracts or agreements; minutes or notes of
meetings and phone calls; and memoranda of understanding.

Freedom of Information Act Request
April 12, 2017

    f. Policies, procedures, and practices governing refugee application grants and adjudications.

    g. Records sufficient to disclose the following information about the screening and visa-issuance evaluation of individuals applying outside the United States. This includes, but is not limited to, any and all such records conveying guidance or instructions as to:

        i. Specialized carrier- or host-government-specific screening or security measures, and

        ii. The type of questioning individuals may be subjected to when applying for a visa while abroad.

    h. Supervisory oversight of interviews of visa applicants at all overseas locations, including, but not limited to, any and all such records related to:

        i. Complaints of mistreatment or violations of law or agency policy by DOS officers;

        ii. Discipline of DOS officers for mistreatment of individuals or violations of law or agency policy by DOS officers;

        iii. Discipline or supervisory oversight of DOS officers for mistreatment or violations of law or agency policy.

    i. All talking points, such as those described in the DOS directive, "New Executive Order 13780: Protecting the Nation from Foreign Terrorist Entry Into the United States – Guidance to Visa-Issuing Posts," State Dep't Cable No. 17 STATE 23338, ¶ 1 (Mar. 10, 2017) ("Mar. 10 DOS Cable"), distributed to DOS field offices from November 8, 2016 to the date this request is fulfilled.

    j. All operational resources distributed to DOS field offices from November 8, 2016 to the date this request is fulfilled.

    k. All records related to planned or scheduled circuit rides, including but not limited to their location, timing, and interviewing priorities.

2. Any and all training memos, manuals, powerpoint presentations, guidance, or other similar records created, modified, sent, received, and/or collected on or after November 8, 2016 that relate to any of the topics listed in paragraphs 1(a)-(k), above.

3. Any and all e-mails and/or text communications between phones or other electronic devices, received or sent by any of the following individuals, on or after November 8, 2016, that relate to any of the topics listed in paragraphs 1(a)-(k), above:

    a. John Kerry, former Secretary of State;

    b. Rex Tillerson, Secretary of State;

    c. Tony Blinken, former Deputy Secretary of State;

    d. Heather Higginbottom, former Deputy Secretary of State for Management and Resources, DOS;

    e. Thomas A. Shannon Jr., acting Under Secretary for Political Affairs, DOS;

    f. Patrick F. Kennedy, former Under Secretary for Management, DOS;

    g. D. Bruce Wharton, Under Secretary for Public Diplomacy and Public Affairs, DOS;

Freedom of Information Act Request
April 12, 2017

    h.  Rose Gottemoeller, former Under Secretary for Arms Control and International Security, DOS;

    i.  Sarah Sewall, former Under Secretary for Civilian Security, Democracy, and Human Rights, DOS;

    j.  Catherine A. Novelli, former Under Secretary for Economic Growth, Energy, and the Environment, DOS;

    k.  Simon Henshaw, acting Assistant Secretary of State for Bureau of Population, Refugees, and Migration, DOS;

    l.  Anne C. Richard, former Assistant Secretary of State for Bureau of Population, Refugees, and Migration, DOS;

    m.  David T. Donahue, acting Assistant Secretary of State for Consular Affairs, DOS;

    n.  Michele T. Bond, former Assistant Secretary of State for Consular Affairs, DOS;

    o.  Kristie A. Kenney, former Counselor of the Department, DOS;

    p.  Rashad Hussain, former Special Envoy to the Organization of Islamic Cooperation, DOS;

    q.  Donald E. Booth, former U.S. Special Envoy to Sudan and South Sudan, DOS;

    r.  Michael Ratney, acting U.S. Special Envoy for Syria, DOS;

    s.  Shaarik Zafar, former Special Representative to Muslim Communities, DOS;

    t.  Any other individuals who served in any of the aforementioned positions at any point on or after November 8, 2016;

    u.  Any individual who served as the seniormost official in the Office of the Chief of Staff, DOS, at any point on or after November 8, 2016;

    v.  Any individual who served as the seniormost official in a DOS field office or consulate, at any point on or after November 8, 2016;

4. Records sufficient to show the following:

    a.  Disaggregated by country of residence, nationality, race, ethnicity, gender, age, and religion, of both petitioner and beneficiary, and by consulate, where available:

        i.  The number of visa applications submitted from November 8, 2015 to the date this request is fulfilled, organized by week and current status of visa application;

        ii.  The number of visa interviews in which the visa was granted from November 8, 2015 to the date this request is fulfilled, organized by week and date of original visa application;

        iii.  The number of visa interviews conducted from November 8, 2015 to the date this request is fulfilled, organized by week, date of original visa application, and current status of the application;

        iv.  The number of visa applications approved from November 8, 2015 to the date this request is fulfilled, organized by week and original date of application;

        v.  The number of visa applications left unprocessed, held, or otherwise not granted from November 8, 2015 to the date this request is fulfilled, organized by week of submission, whether an interview was conducted, and identified by the current status of the application;

Freedom of Information Act Request
April 12, 2017

      vi. The number of approved visas revoked by DOS officers from November 8, 2015 to the date this request is fulfilled, organized by week of revocation, date of iniytial visa issuance, as well as the reason(s) why such visas were denied as stated on the applicable Notice of Ineligibility (if recorded);

     vii. The number of individuals who have contacted DOS field offices or headquarters for assistance with obtaining new travel documents to replace travel documents revoked under EO 1, as described in the Mar. 10 DOS Cable, ¶ 18;

        1. The status of the requests described above, broken down by the same demographic information and date(s) of contact and any response given.

  b. Disaggregated by location, nationality, gender, age, and religion of applicant, and by consulate, where available:

      i. The number of applications for refugee status submitted from November 8, 2015 to the date this request is fulfilled, organized by week of submission;

     ii. The number of refugee applications granted by DOS (including grants of parole) from November 8, 2015 to the date this request is fulfilled, organized by week the application was granted and the date of initial application;

    iii. The number of refugee applications denied by DOS (including "No Decision" or "Not Qualified") from November 8, 2015 to the date this request is fulfilled, organized by week of denial and the date of initial application, as well as the reason(s) why such applications were denied as stated on the applicable Notice of Ineligibility (if recorded);

    iv. The number of individual, case-by-case waivers of suspension of refugee admissions pursuant to Section 5(e) of EO 1, from January 27, 2017 until the date this request is fulfilled, organized by date waiver was granted;

     v. The number of individual, case-by-case waivers of suspension of refugee admissions pursuant to Section 6(c) of EO 2, from March 16, 2017 until the date this request is fulfilled, organized by date waiver was granted.

5. The following memoranda, directives, and documents:

  a. The key for all refusal codes for visa-application determinations;

  b. All advisory opinions, including Security Advisory Opinions, and requests for advisory opinions, including Security Advisory Opinions, submitted by field office staff members from November 8, 2016 to the date this request is fulfilled;

  c. Copies of any and all guidance regarding issuance procedures for Iraqi nationals, as explained in the Mar. 10 DOS Cable, ¶ 15;

  d. All emails sent from countries-of-concern-inquiries@state.gov and all responses (if any) to those emails, as decribed in paragraph 14 of the Mar. 10 DOS Cable;

  e. Records sufficient to disclose the average number of visa interviews per consular adjudicator per day, from November 8, 2015 to the date this request is fulfilled, broken down weekly by consular office, and including information about the average approval, deferral, or denial rates; and

Freedom of Information Act Request
April 12, 2017

   6. All records created, sent, received, referenced, and/or used in fulfilling and/or responding
      to this Request.

   We request that searches of all electronic and paper/manual indices, filing systems, and
locations for any and all records relating or referring to the subject of our Request be conducted.
This includes, but is not limited to, the personal email accounts and work phones of all
employees and former employees who may have sent or received emails, text messages, or other
communications regarding the subject matter of this Request, as well as all institutional, shared,
group, duty, task force, and all other joint and/or multi-user email accounts, work phones, and/or
other digital or analog means of communication which may have been utilized by each such
employee or former employee. Additionally, for each relevant email account identified, all
storage areas are included in this Request, including, but not limited to, the inbox "folder" (and
all subfolders therein), sent folder, deleted folder, outbox folder, and all relevant archive files.

   Please search all records regarding agency business. You may not exclude searches of
files or emails in the personal custody of your officials, such as personal email accounts. Records
of official business conducted using unofficial systems or stored outside of official files are
subject to the Federal Records Act and FOIA.[2] It is not adequate to rely on policies and
procedures that require officials to move such information to official systems within a certain
period of time; Requestors have a right to records contained in those files even if material has not
yet been moved to official systems or if officials have, through negligence or willfulness, failed
to meet their obligations.[3]

   In addition, please note that in conducting a "reasonable search" as required by law, you
must employ the most up-to-date technologies and tools available, in addition to searches by
individual custodians likely to have responsive information. Recent technology may have
rendered DOS's prior FOIA practices unreasonable. In light of the government-wide
requirements to manage information electronically by the end of 2016, it is no longer reasonable
to rely exclusively on custodian-driven searches.[4] Furthermore, agencies that have adopted the

---

[2] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149-50 (D.C. Cir.
2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955-56 (D.C. Cir. 2016).
[3] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8
(D.D.C. Dec. 12, 2016) ("The Government argues that because the agency had a policy requiring
[the official] to forward all of his emails from his [personal] account to his business email, the
[personal] account only contains duplicate agency records at best. Therefore, the Government
claims that any hypothetical deletion of the [personal account] emails would still leave a copy of
those records intact in [the official's] work email. However, policies are rarely followed to
perfection by anyone. At this stage of the case, the Court cannot assume that each and every
work related email in the [personal] account was duplicated in [the official's] work email
account." (citations omitted)).
[4] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28,
2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-
memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the
President, Memorandum for the Heads of Executive Departments & Independent Agencies,
"Managing Government Records Directive," M-12-18 (Aug. 24, 2012),

Freedom of Information Act Request
April 12, 2017

National Archives and Records Agency (NARA) Capstone program, or similar policies, now maintain emails in a form that is reasonably likely to be more complete than individual custodians' files. For example, a custodian may have deleted a responsive email from his or her email program, but DOS's archiving tools would capture that email under Capstone. Accordingly, the Requestors insist that DOS use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. Requestors are available to work with you to craft appropriate search terms. However, custodian searches are still required; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

If any records responsive or potentially responsive to the Request have been destroyed, our Request includes, but is not limited to, any and all records relating or referring to the destruction of those records. This includes, but is not limited to, any and all records relating or referring to the events leading to the destruction of those records.

With respect to the form of production, CAIR-CT and MRNY request that responsive electronic records be provided electronically in their native file format, if possible, except that aggregated data be provided in searchable Microsoft Excel spreadsheets, if possible. *See* 5 U.S.C. § 552(a)(3)(B). Alternatively, CAIR-CT and MRNY request that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

## II.      Application for Expedited Processing

The Requestors ask for expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the information, as defined by the statute, because the Requestors are organizations "primarily engaged in disseminating information" and have an "urgency to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

*A.      Requestors are organizations primarily engaged in disseminating information in order to inform the public about actual or alleged government activity*

Dissemination of information to the public is a critical and substantial component of Requestors' mission and work. The Requestors distribute information and research they gather to the public through various publications, educational sessions, and electronic communications, thus qualifying them as organizations "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also Am. Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (explaining that non-profit public-interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" is "primarily engaged in disseminating information").

**CAIR-CT** is a non-profit 501(c)(3) organization dedicated to presenting an Islamic perspective on issues of importance to the American public. CAIR-CT's mission is to enhance

---

https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

Freedom of Information Act Request
April 12, 2017

the understanding of Islam, encourage dialogue, protect civil liberties, empower American Muslims, and build coalitions that promote justice and mutual understanding. CAIR works to promote civil rights by mediating on behalf of Muslims who have experienced discrimination, helps elected officials to understand policy issues related to Islam and Muslims, and monitors legislation and government activities. As the Connecticut chapter of a national organization, CAIR-CT specifically works on behalf of Connecticut's more than 150,000 Muslims.

As part of its policy advocacy and monitoring of news media and public policy, CAIR-CT publishes news and alerts regarding issues affecting the Muslim community, including "Action Alerts" and press releases regarding legal issues affecting Muslims.[5] CAIR-CT also conducts trainings and educational workshops addressing interactions with law enforcement and other government officials, including regular trainings at local masaajid and Islamic centers throughout Connecticut aimed at educating people on issues affecting the Muslim community. CAIR-CT also works with local and national media to ensure that an accurate image of Islam and Muslims is presented to the American public.

**MRNY** is a non-profit 501(c)(3) organization dedicated to empowering immigrant, Latino, and working-class communities in New York City. As an integral part of its mission, MRNY educates the public about civil-rights issues affecting working-class and immigrant communities through electronic newsletters, reports, fact sheets, trainings, curricula, classes, and other educational and informational material. MRNY also disseminates information and analyses on pending and proposed legislation, engages in public policy advocacy, and mobilizes community members to advocate with their legislators.

As part of its organizing and public-policy advocacy efforts, MRNY conducts research on issues affecting the community it serves and conducts substantial outreach to policymakers and the media. MRNY regularly conducts research and publishes reports, fact sheets, and other informational material on issues important to the immigrant, Latino, and working class communities it serves. MRNY also conducts educational workshops on the risks and benefits of applying for renewed Deferred Action for Childhood Arrivals ("DACA") applications. Additionally, MRNY frequently releases media statements, and disseminates information about local, state, and national issues to its thousands of members and to the public at large.

MRNY also directly educates members of the New York community through classes and trainings and may find information obtained through this request useful in its educational activities. Among other activities, MRNY: (1) conducts "Know Your Rights" trainings on subjects such as what to do when encountering law enforcement, with the goal of increasing the

---

[5] *See, e.g., CAIR Community Alert: Khatibs Urged to Address Post-Election Concerns in Muslim Community During Jummah Prayers*, COUNCIL ON AMERICAN-ISLAMIC RELATIONS (Nov. 11, 2016), http://www.cair.com/press-center/american-muslim-news/13883-cair-community-alert-khatibs-urged-to-address-post-election-concerns-in-muslim-community-during-jummah-prayers.html; *CAIR Asks GOP to Repudiate Islamophobic Remarks of Delaware Lawmaker Who Walked Out Before Muslim Prayer*, COUNCIL ON AMERICAN-ISLAMIC RELATIONS (Apr. 6, 2017), http://www.cair.com/press-center/press-releases/14259-cair-asks-gop-to-repudiate-islamophobic-remarks-of-delaware-lawmaker-who-walked-out-before-muslim-prayer.html.

Freedom of Information Act Request
April 12, 2017

community's ability to enforce their own rights while building their practical knowledge of the laws that affect them most; (2) educates thousands of immigrants and their families about deportation relief options and available services; and (3) provides comprehensive skills training to hundreds of low-income New Yorkers each year on leadership skills, media advocacy, civics, community and electoral organizing, and strategic policy advocacy.

      B.      *The records sought are urgently needed to inform the public about actual or alleged government activity*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). The question of discriminatory policies being applied to individuals perceived to be Muslims or members of other targeted groups has been the subject of extensive media coverage in almost every major media outlet. In addition to numerous lawsuits,[6] the public has expressed its concern and engagement with this issue through numerous large protests.[7]

On January 27, 2017, President Donald J. Trump issued an executive order that indefinitely blocked refugees from Syria from entering the United States, barred all refugees for 120 days, and prohibited individuals from seven predominantly Muslim countries – Iran, Iraq, Libya, Somalia, Sudan, Syria and Yemen – from entering the United States for 90 days.[8] By the following day, January 28, 2017, CBP officials across the country had detained an estimated 100 to 200 individuals at airports throughout the United States.[9] Soon thereafter, Judge Donnelly of the Eastern District of New York issued a nationwide order in *Darweesh v. Trump*, that prohibited the government from removing any detained travelers from the seven banned countries who had been legally authorized to enter the United States.[10] Meanwhile, protests erupted at airports across the country as volunteer attorneys stood by to assist detained travelers and their families.[11]

---

[6] *See, e.g.*, *Legal Challenges Mount Against Trump's Travel Ban*, N.Y. TIMES (Jan. 30, 2017), https://www.nytimes.com/2017/01/30/us/legal-challenges-mount-against-trumps-travel-ban.html.

[7] *See, e.g.*, *Thousands Protest Against Trump Travel Ban in Cities and Airports Nationwide*, GUARDIAN (Jan. 29, 2017), https://www.theguardian.com/us-news/2017/jan/29/protest-trump-travel-ban-muslims-airports.

[8] Exec. Order No. 13,769, 82 Fed. Reg. 8977 (Feb. 1, 2017).

[9] *See, e.g.*, Michael D. Shear *et al.*, *Judge Blocks Trump Order on Refugees Amid Chaos and Outcry Worldwide*, N.Y. TIMES (Jan. 28, 2017), https://www.nytimes.com/2017/01/28/us/refugees-detained-at-us-airports-prompting-legal-challenges-to-trumps-immigration-order.html.

[10] Decision and Order, *Darweesh v. Trump*, No. 17 Civ. 480 (AMD) (E.D.N.Y. Jan. 28, 2017), https://www.aclu.org/legal-document/darweesh-v-trump-decision-and-order.

[11] *See, e.g.*, Peter Baker, *Travelers Stranded and Protests Swell Over Trump Order*, N.Y. TIMES (Jan. 29, 2017), https://www.nytimes.com/2017/01/29/us/politics/white-house-official-in-reversal-says-green-card-holders-wont-be-barred.html.

Freedom of Information Act Request
April 12, 2017

Several days later, Judge Robart of the Western District of Washington issued a nationwide order suspending enforcement of President Trump's executive order.[12] That decision was affirmed by the Ninth Circuit.[13] In response, President Trump issued a second executive order, revoking the first executive order, banning travel from certain predominantly Muslim countries, and suspending the refugee program.[14] Prior to its taking effect on March 16, 2017, federal district courts in Hawaii and Maryland blocked the order's sections affecting travel and refugees, citing that the order was likely motivated by an intent to discriminate against Muslims.[15]

Accordingly, the Requestors seek to supplement the public record and to inform the public about DOS's policies and practices in subjecting individuals to heightened questioning and screening procedures. Extensive media coverage and public protests demonstrate that this is a topic of great import and general concern, about which it is urgent that the public remain informed. *See* 6 C.F.R. § 5.5(e)(3) (noting that "existence of numerous articles published on a given subject" can support urgency to inform public for purposes of expedited processing).

## III.   **Application for Waiver or Limitation of Fees**

The Requestors request a waiver of document search, review, and duplications fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The Requestors also request waiver of search and review fees on the grounds that the Requestors qualify as "representatives of the news media" and the records are not sought for commercial use. *Id.* § 552(a)(4)(A)(ii)(II).

> *A.   The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of Requestors*

As discussed above, widespread media coverage and public demonstrations underscore the continued public interest in the records sought through this Request. While much coverage has been dedicated to President Trump's executive orders, there has been relatively less attention devoted to the particular policies and practices DOS officers have adopted to implement the orders, or to effectuate the immigration-related policy statements of the Trump Administration. The records sought will contribute significantly to the public's understanding of the

---

[12] Temporary Restraining Order, *Washington v. Trump*, No. C17-0141JLR (W.D. Wash. Feb. 3, 2017), https://www.clearinghouse.net/chDocs/public/IM-WA-0029-0005.pdf.

[13] Order, *Washington v. Trump*, No. 17-35105 (9th Cir. Feb. 9, 2017), https://www.clearinghouse.net/chDocs/public/IM-WA-0029-0067.pdf.

[14] Exec. Order No. 13,780, 82 Fed. Reg. 13209 (Mar. 6, 2017).

[15] Matt Zapotosky, *Second Federal Judge Blocks Revised Trump Travel Ban*, WASH. POST (Mar. 16, 2017), https://www.washingtonpost.com/local/social-issues/second-federal-judge-blocks-revised-trump-travel-ban/2017/03/16/dc47cd1e-0a2a-11e7-93dc-00f9bdd74ed1_story.html?utm_term=.0889b847b191.

Freedom of Information Act Request
April 12, 2017

government's operations by providing insight into whether DOS is specifically targeting individuals of particular religious or ethnic groups as a matter of policy or if DOS is engaging in a pattern of discrimination against particular religious or ethnic groups.

The Requestors are not filing this request to further their commercial interests. Any information disclosed to the Requestors as a result of this FOIA request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending the FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B.    *The Requestors are representatives of the news media and the records are not sought for commercial use*

The Requestors also request a waiver of search and review fees on the grounds that they qualify as "representative[s] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). As demonstrated above, the Requestors meet the statutory definition of a "representative of the news media" because they are entities "that gather[] information of potential interest to a segment of the public, [use their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience." *Id.* § 552(a)(4)(A)(ii)(III). In construing the term, "[i]t is critical that the phrase 'representative of the news media' be broadly interpreted if the act is to work as expected." *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1386 (D.C. Cir. 1989) (citations omitted). Here, for example, MRNY releases hundreds of press advisories each year, which distill information the organization has gathered and are disseminated to other news organizations and interested parties. The media advisories are also made publicly available on MRNY's website. *See Press Advisories*, Make the Road New York, http://www.maketheroadny.org/archive_type.php?ID=1 (Mar. 26, 2017). MRNY also publishes numerous policy reports to the public.[16]

Moreover, courts have found other organizations whose missions, functions, publications, and public education activities are similar in kind to the Requestors' to be "representatives of the news media" as well. *See, e.g.*, *Serv. Women's Action Network v. U.S. Dep't of Defense*, 888 F. Supp. 2d 282, 287-88 (D. Conn. 2012) (finding that requestors, including organization that

---

[16] *See, e.g.*, *The $ 3.4 Trillion: The Cost of Mass Incarceration and Criminalization and How Justice Reinvestment Can Build a Better Future for All*, Make the Road New York et al. (Oct. 17, 2016), http://www.maketheroadny.org/report.php?ID=4355; *Where's My Seat? How School Overcrowding Disproportionately Impacts Immigrant Communities in New York City*, Make the Road New York (Nov. 24, 2015), http://www.maketheroadny.org/report.php?ID=4178; *Lost in Translation: Report Card on Nassau County Agencies' Compliance with Language Access Executive Orders*, Make the Road New York (Aug. 18, 2014), http://www.maketheroadny.org/report.php?ID=3649; *Consumer Abuse and Environmental Hazards in New York City's Car Wash Industry*, Make the Road New York (Dec. 12, 2013), http://www.maketheroadny.org/report.php?ID=3275; *The Committee for Better Banks Report: The State of the Bank Employee on Wall Street*, Make the Road New York (Dec. 5, 2013), http://www.maketheroadny.org/report.php?ID=3201.

Freedom of Information Act Request
April 12, 2017

"empower[ed] current service women and female veterans through advocacy initiatives and community programs," were representatives of news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Defense*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003) (finding non-profit public-interest group that disseminated electronic newsletter and published books was "representative of the news media" for purposes of the FOIA); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (finding Judicial Watch, self-described as "public interest law firm," to be news-media requester). In each of these cases, the court has found these organizations to be "representatives of the news media" even though the requesting organizations also engage in litigation and advocacy activities beyond their dissemination of information and public education activities.

*    *    *

Pursuant to 5 U.S.C. § 552(a)(6)(E)(ii)(I), the Requestors expect a determination regarding expedited processing within ten days. If this request for records is denied in whole or in part, please justify all deletions and omissions by reference to specific FOIA exemptions. We expect DOS to release all segregable portions of otherwise exempt material. For example, we expect DOS to redact names of individuals for whom privacy waivers are not enclosed, if such redaction is required by the Privacy Act or other law, and to release any otherwise disclosable records as redacted.

We reserve the right to appeal any decision relating to this FOIA request, including, but not limited to, the decision to withhold any information, or to deny expedited processing, or to deny a waiver or reduction of fees.

Thank you in advance for your timely consideration of this request. Please furnish records as soon as they are identified to the undersigned at:

> Muneer Ahmad
> Jerome N. Frank Legal Services Organization
> Yale Law School
> 127 Wall Street
> New Haven, CT 06511

We certify that the information provided supporting the request for expedited processing is true and correct to the best of our knowledge and belief.

Sincerely,

Muneer Ahmad
Jerome N. Frank Legal Services Organization
Yale Law School
127 Wall Street

12

Freedom of Information Act Request
April 12, 2017

New Haven, CT 06511

Adam Bradlow
David Chen
Jordan Laris Cohen
Susanna D. Evarts
Amit Jain
Clare Kane
Aaron Korthuis
Zachary Manfredi
Joseph Meyers
Victoria Roeck
*Law student interns*

# **EXHIBIT**
# **I**



United States Department of State

*Washington, D.C. 20520*

APR 1 7 2017

Dear Requester,

RE: *Records related to DOS policies, procedures, and practices on screening and visa issuances of individuals applying abroad.*

This is in response to your request dated *4-12-2017*, which was received on *4-13-2017*. We have assigned Case Control Number *F-2017-09834* and will begin the processing of your request based upon the information provided in your communication.

The cut-off date is the date the search is initiated unless you have provided a specific timeframe.

After consideration of your request for expedited processing under the Department's rules governing Freedom of Information Act requests, we have determined that your request does warrant expedited processing.

We have considered your request for a fee waiver. Based upon the information provided in your letter, your request for a fee waiver has been granted; therefore, your request will be processed at no charge to you.

We will notify you as soon as responsive material has been retrieved and reviewed.

Should you want to contact us, you may call our FOIA Requester Service Center at (202) 261-8484 or send an email to FOIAstatus@state.gov. Please refer to the Case Control Number in any communication.

Sincerely,

Requester Communications Branch
Office of Information Programs & Services

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website:  www.foia.state.gov*

*Inquiries:*
*Phone:  1-202-261-8484*
*FAX:  1-202-261-8579*
*E-mail:  FOIAStatus@state.gov*