THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS – CONNECTICUT and MAKE THE ROAD NEW YORK, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civ. No. 3:17-cv-01061-RMS |
| v. | ) ) ) | |
| U.S. DEPARTMENT OF STATE, | ) ) ) | |
| Defendant. | ) ) ) | |

## DECLARATION OF ERIC F. STEIN

Pursuant to 28 U.S.C. § 1746, I, Eric F. Stein, declare and state as follows:

1.      I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department" or "State") and have served in this capacity since January 22, 2017.  Previously, I served as the Acting Director since October 16, 2016, and as the Acting Co-Director since March 21, 2016.  I am the State official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other records access provisions.  As the Director of IPS, I have original classification authority and am authorized to classify and declassify national security information.  Prior to serving in my current capacity, I worked directly for State's Deputy Assistant Secretary ("DAS") for Global Information Services ("GIS") and served as a senior advisor and deputy to the DAS on all issues related to GIS offices and programs, which include IPS.

2.      I am familiar with the efforts of Department personnel to process the FOIA request that is the subject of this litigation, and I am in charge of coordinating the agency's search and processing efforts with respect to that request.  I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties.

3.      The purpose of this declaration is to describe the ways in which the Department's FOIA processing capabilities are being seriously compromised by the COVID-19 pandemic.  In short, because of the grave impact of the COVID-19 pandemic that has limited Executive Branch work in the office workplace to mission-critical functions, the inaccessibility from outside of Department worksites of the systems the Department uses to process FOIA cases, and the Department's paramount concern for the safety of its employees, the Department is unable to continue processing documents in response to the request in this case.

## I.  Executive Branch Guidance

4.      On March 13, 2020, President Trump declared that the COVID-19 outbreak in the United States constitutes a national emergency.

5.      The United States Office of Personnel Management ("OPM") has been issuing guidance to address how the Federal Government can implement measures to protect its workforce and the American public.  Specifically, on March 7, 2020, OPM recommended the "incorporation of telework and "social distancing" in COOP [Continuity of Operations] and emergency planning [to] allow the Federal Government to continue functioning efficiently and effectively, while ensuring the health and safety of employees."  Further, on March 15, 2020, the Acting Director of the Office of Management and Budget ("OMB") issued guidance to Federal agencies in the National Capital Region to implement maximum telework flexibilities. OMB's

2

guidance asked agencies "to offer maximum telework flexibilities to all current telework eligible employees, consistent with operational needs of the departments and agencies as determined by their heads."

6.     On March 17, 2020, OMB issued a memorandum to the heads of all departments and agencies with the subject line "Federal Agency Operational Alignment to Slow the Spread of Coronavirus (COVID-19)."

7.     The OMB memorandum recognized that Executive Branch agencies are working "to balance the needs of mission-critical work and greater social distancing," and accordingly directed Executive Branch agencies to "take appropriate steps to prioritize all resources to slow the transmission of COVID-19, while ensuring our mission-critical activities continue."

8.     The OMB memorandum further directed Executive Branch agencies to "[r]educe and re-prioritize non-mission-critical services to free up capacity for critical services," to "[m]aximize telework across the nation for the Federal workforce," and to "immediately adjust operations and services to minimize face-to-face interactions."

9.     The Department is implementing these guidelines to protect its employees and their communities, and to ensure that it can continue to perform mission-critical functions during this national emergency.

## II.  Staffing

10.     IPS currently employs retired Foreign Service Officers (Retired Annuitants or "REAs") to review and process documents in response to FOIA requests to leverage these individuals' knowledge of the Department.

11.     REAs are an indispensable part of the FOIA litigation process.  In each FOIA litigation case, IPS assigns documents to an REA or a team of REAs with appropriate clearance

3

and subject matter expertise to process a particular set of documents. REAs perform a line-by-line review of each document to determine whether the document is responsive to the request, whether it contains any classified information, information subject to one of the nine FOIA statutory exemptions, of information belonging to other equity holders, such as other federal agencies and third parties. During this process, REAs consult other Department employees (including, for example, employees in regional bureaus or attorneys) as appropriate. These consultations often occur more than once in the review process and inform the Department's determination about the applicability of any FOIA exemption. Additionally, if REAs determine that a document originated with the Department, but contains another federal agency's information (or "equities"), an IPS employee will send that document to the relevant federal agency for consultation. After completing the internal and external consultation processes, REAs redact any information pursuant to FOIA exemptions and mark documents that the Department will release in full or in part with the required stamps, which indicate the release determinations and FOIA exemptions applied. If REAs completing this process are relatively inexperienced, their work undergoes a second-level review by a senior reviewer—also an REA—to ensure that the original reviewer properly applied FOIA exemptions and consulted with relevant Department bureaus and federal agencies. As the primary and secondary reviewers of potentially responsive documents, REAs are an indispensable part of the FOIA litigation process.

12.     REAs are no longer able to access their State Department offices for two reasons. First, the processing of FOIA cases is not a mission-critical function, and it does not fit within the mission-critical exceptions noted in the most recent OMB Circular (i.e., "Exceptions may be needed when continued operations and services are necessary to protect public health and safety,

including law enforcement and criminal-justice functions."). In addition, because REAs are retired Foreign Service Officers, many of them are within the age groups identified by the CDC as being at higher risk for serious illness from COVID-19. In light of Executive Branch guidance, my paramount concern for the safety of IPS employees, and the non-mission-critical determination, I have paused the scheduling of all REAs working in Department offices for the next several weeks, effective March 19, 2020.

13.     REAs are telework-eligible, meaning that they are eligible to enter into scheduled or situational telework agreements with the Department. However, at the time of this declaration, very few REAs are telework-ready; most do not have current, approved telework agreements, do not have the technological capability to telework, or have chosen not to telework. REAs cannot be compelled to telework.[1]

14.     However, even if we were are able to increase the number of telework-ready REAs, those REAs would be unable to advance any work on this case due to the fact that the potentially responsive documents reside in a software system maintained on a classified network that cannot be accessed remotely.

### III.  Document Review Systems

15.     The potentially responsive records that have been collected for this FOIA case are stored and processed in a document review system known as "FREEDOMS 2." The FREEDOMS 2 system is operated exclusively on a Department classified computer network, ClassNet.

---

[1] We currently estimate that there is a 96% reduction in REA availability. I am currently working to increase the number of telework-ready REAs, including by encouraging REAs to submit requests for telework agreements and by moving those requests through the process as quickly as practicable. At this time, very few REAs are telework-ready.

16.     ClassNet is accessible only from a Department workplace.  Thus, it is inaccessible to any Department employees who are teleworking or otherwise not physically present at a Department worksite.

17.     The Department is in the process of transferring all of its FOIA cases from FREEDOMS 2 to a new document review platform, FOIAXpress.  Nevertheless, cases currently in FREEDOMS 2, like this case, will continue to be processed on a classified network after the transfer, even though FOIAXpress is capable of processing documents on both classified and unclassified networks.  This is because classified documents associated with a case in FREEDOMS 2 are intermingled with unclassified documents, and there is no efficient way to separate classified from unclassified documents before a case is transferred to FOIAXpress.  Accordingly, even after the documents for this case are transferred to FOIAXpress, they will be accessible only on ClassNet and therefore will be inaccessible to Department employees who are teleworking or are otherwise not physically present at a Department worksite.

## IV.  Consultations

18.     As noted above, the review process for many documents necessitates consultations with other Department components.  IPS has been informed by several Department components that, for the foreseeable future, changes in staffing patterns in response to the COVID-19 pandemic will make it difficult for them to respond to FOIA consultations in a timely manner.

19.     In addition, the review process for many documents necessitates consultations with other components of the Executive Branch.  Much like the internal Department components, other components of the Executive Branch have informed IPS that, for the

foreseeable future, changes in staffing patterns in response to the COVID-19 pandemic may make it difficult for them to respond to FOIA consultations in a timely manner.

20.     If IPS does not receive consultation responses from internal Department components or external Executive Branch components, per State Department FOIA procedures, the Department does not release documents in response to FOIA requests.

### V.  Conclusion

21.     The Department is committed to complying with all court orders and meeting all of its FOIA demands to the best of its ability, and it will continue limited operations to process FOIA requests to the extent practicable under these extraordinary circumstances.  However, because of the grave impact of the COVID-19 pandemic described herein, the Department's ability to do so is severely compromised.

***

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 27th day of March 2020, Washington, D.C.

Eric F. Stein