IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS – CONNECTICUT and MAKE THE ROAD NEW YORK, <br><br> *Plaintiffs,* <br><br> v. <br><br> U.S. CITIZENSHIP AND IMMIGRATION SERVICES, U.S. CUSTOMS AND BORDER PROTECTION, and U.S. DEPARTMENT OF STATE, <br><br> *Defendants*. | Civil Action No. 3:17-cv-1061-RMS |

**PLAINTIFFS' LOCAL RULE 56(a)(1)
STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. On March 6, 2017, President Trump issued Executive Order 13,780. *See* Bates Decl., Ex. D (Exec. Order 13,780).

2. Section 5 of Executive Order 13,780 was titled "Implementing Uniform Screening and Vetting Standards for All Immigration Programs." Bates Decl., Ex. D (Exec. Order 13,780 § 5).

3. Section 5(a) of Executive Order 13,780 required the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence to "implement a program" for screening and vetting in immigration programs. Bates Decl., Ex. D (Exec. Order 13,780 § 5(a)).

4. Section 5(b) of Executive Order 13,780 required the Secretary of Homeland Security, in conjunction with the Secretary of State, the Attorney General, and the Director of National Intelligence, to submit to the President an initial report ("Report") on the progress of

implementing Section 5(a) of Exec. Order 13,780 within 60 days of March 16, 2017.  Bates

Decl., Ex. D (Exec. Order 13,780 § 5(b)).

5.  On March 6, 2017, President Trump also issued a Memorandum for the Secretary of State,

Attorney General, and Secretary of Homeland Security related to "Implementing

Immediate Heightened Screening and Vetting of Applications for Visas and Other

Immigration Benefits[.]"  Bates Decl., Ex. D (Presidential Memorandum).

6.  Section 2 of the Presidential Memorandum was titled "Enhanced Vetting Protocols and

Procedures for Visas and Other Immigration Benefits."  Bates Decl., Ex. D (Presidential

Memorandum § 2).

7.  Section 2 of the Presidential Memorandum directed the Secretary of State and the Secretary

of Homeland Security, in consultation with the Attorney General, to "implement protocols

and procedures as soon as practicable that in their judgment will enhance the screening and

vetting of applications for visas and all other immigration benefits[.]"  Bates Decl., Ex. D

(Presidential Memorandum § 2).

8.  The Secretary of Homeland Security submitted the Report to the President on or about May

5, 2017.  Bates Decl., Ex. D (Exec. Order 13,780 § 5(b)).

9.  The Report describes the executive agencies' progress in implementing Section 5(a) of

Exec. Order 13,780 as of the date of the Report.  *See* Bates Decl., Ex. D; Plaintiffs'

Statement of Undisputed Material Facts ("SUMF") 22-34.

**State Department Productions**

10. On December 9, 2022, Defendants informed Plaintiffs that they had finished Freedom of

Information Act ("FOIA") processing for the Report and that they are withholding the

document in full and in part under several exemptions to the FOIA. Bates Decl. ¶ 7.

11. On July 26, 2022, the Department of State ("State") produced Doc. No. C06880428 ("Cable") to Plaintiffs.  Bates Decl. ¶ 8(a); *see id.*, Ex. A.

12. On August 20, 2021, State produced Doc. No. C06762443 ("Operational Q&A") to Plaintiffs.  Bates Decl. ¶ 8(b); *see id.*, Ex. B.

13. On December 11, 2020, State produced Doc. No. C06880690 ("PRA Supporting Statement") to Plaintiffs.  Bates Decl. ¶ 8(c); *see id.*, Ex. C.

14. On August 20, 2021, State produced Doc. No. 06762442 ("Earlier Production of Cable") to Plaintiffs.  Bates Decl. ¶ 10(o); *see id.*, Ex. S.

**Disclosure of the Report**

15. The Report was disclosed, at minimum, to each of the following executive agencies and components: Department of Homeland Security ("DHS"), Department of Justice, Department of State, the Office of Director of National Intelligence, the Central Intelligence Agency, U.S. Customs and Border Protection, the DHS Office of Intelligence and Analysis, the DHS Office of Policy (currently the Office of Strategy, Policy and Plans), and the National Security Council.  Holzer Decl. ¶ 15.

16. Defendants have not provided an exhaustive list of the individuals who had access to the Report.  *See* Holzer Decl. ¶¶ 15-16.

17. Defendants have not provided an exhaustive list of the agencies and components that had access to the Report.  *See* Holzer Decl. ¶¶ 15-16.

18. The Report was disclosed to individuals other than those who had significant responsibility for investigating and formulating advice given to the President on the implementation of Exec. Order 13,780 § 5(a) and Presidential Memorandum § 2.  *See* Holzer Decl. ¶¶ 15-16.

19. The Report was disclosed to individuals without instruction to limit dissemination to those who had significant responsibility for investigating and formulating advice given to the President on the implementation of Exec. Order 13,780 § 5(a) and Presidential Memorandum § 2.  *See* Holzer Decl. ¶¶ 15-16.

20. The Report was distributed within the executive branch for non-advisory purposes.  *See* Holzer Decl. ¶¶ 15-16.

21. More than 4 million Americans work in the executive branch of the U.S. government.  *See* Bates Decl., Ex. NN.

**Agency Actions Taken to Implement Section 5(a) of the Executive Order 13,780 Before Report Sent to President**

22. State took action to implement Section 5(a) of Executive Order 13,780 and Section 2 of the Presidential Memorandum by collecting additional information from "post applicant populations warranting increased scrutiny." Bates Decl., Ex. U ¶¶ 6-7; *id.*, Ex. V ¶¶ 6-7; *id.*, Ex. A ¶¶ 4-5; *id.*, Ex. S ¶¶ 4-5; *see id.*, Exs. H, K.

23. In cables sent beginning on March 15, 2017, State implemented Section 5(a) of Executive Order 13,780 and Section 2 of the Presidential Memorandum by instructing all diplomatic and consular posts to "convene post's law enforcement and intelligence community partners under the auspices of existing Visa Viper or Law Enforcement Working Groups . . . to develop a list of criteria identifying sets of post applicant populations warranting increased scrutiny."  Bates Decl., Exs. U ¶ 6; *id.*, Ex. V ¶ 6; *id.*, Ex. A ¶¶ 4-5; *id.*, Ex. S ¶¶ 4-5; *see id.*, Exs. H, K; *see also id.*, Ex. Q at 9 (describing guidance sent to posts); *id.*, Ex. EE at 39 (same).

24. In cables sent beginning on March 15, 2017, State implemented Section 5(a) of Executive Order 13,780 and Section 2 of the Presidential Memorandum by instructing all diplomatic

and consular posts to "attempt to identify individual applicants that fall within the population set" of post applicants warranting increased scrutiny.  Bates Decl., Ex. U ¶ 7; *id.*, Ex. V ¶ 7.

25. In cables sent beginning on March 15, 2017, the State Department implemented Section 5(a) of Executive Order 13,780 and Section 2 of the Presidential Memorandum by providing guidance to all diplomatic and consular posts to consider requesting a discretionary Donkey Security Advisory Opinion ("SAO") check for individual visa applicants identified as warranting increased scrutiny. Bates Decl., Ex. U ¶ 7; *id.*, Ex. V ¶ 7.

26. On March 15, 2017, State implemented Section 5(a) of Executive Order 13,780 and Section 2 of the Presidential Memorandum by providing guidance to all diplomatic and consular posts to collect and record additional information for each applicant receiving a Donkey SAO check as a result of heightened screening and vetting guidance.  Bates Decl., Ex. U ¶ 7.

27. On March 17, 2017, State withdrew the March 15, 2017 guidance to collect and record additional information for each applicant receiving a Donkey SAO check because authorization from the Office of Budget and Management ("OMB") was required before State could mandate additional information collection from post applicants warranting increased scrutiny.  Bates Decl., Ex. V ¶ 7; *see id.*, Ex. A ¶ 8.

28. On April 28, 2017, State implemented Section 5(a) of Executive Order 13,780 and Section 2 of the Presidential Memorandum by submitting a request to OMB for emergency authorization under the Paperwork Reduction Act for proposed new data collection using

form DS-5355 titled "Supplemental Questions for Visa Applicants." Bates Decl., Exs. O, W, X.

29. DS-5355 collects additional information from visa applicants "warranting increased scrutiny" who are subject to SAO checks.  Bates Decl., Ex. O; *id.*, Ex. U ¶ 7; *id.*, Ex. V ¶ 7; *id.*, Ex. X.

30. DS-5535 implemented, at least in part, Section 5(a) of Executive Order 13,780 and Section 2 of the Presidential Memorandum.  Bates Decl., Ex. D (Exec. Order 13,780 § 5(a)); *id.*, Exs. O, X.

31. President Trump and members of his Administration publicly touted their progress in implementing Section 5(a) of Executive Order 13,780 and Section 2 of the Presidential Memorandum in tweets, op-eds, press releases, and at rallies.   Bates Decl., Ex. T at 5-7; *id.*, Ex. Y at 3; *id.*, Ex. Z at 6, 8; *id.*, Ex. AA; *id.*, Ex. CC at 1-3.

32. Trump Administration officials gave public testimony to Congress detailing security and vetting improvements associated with President Trump's Muslim Ban.  Bates Decl., Ex. Q at 9-10; *id.*, Ex. EE at 39-40; *see also id.*, Ex. DD at 5-8, *id.*, Ex. EE at 9-20, 22, 24-32, 35-36, 43-44, 46, 52-53, 57-61; *id.*, Ex. TT at 4-7.

33. The State Department implemented Section 5(a) of Executive Order 13,780, at least in part, before the Report was sent to the President. Bates Decl., Ex. D (Exec. Order 13,780 § 5(b)); *id.*, Exs. O, X.

34. By April 29, 2017, the Trump Administration had taken steps to "properly screen and vet those seeking admission into our country" under Section 5(a) of Executive Order 13,780 *See* Bates Decl. Ex. Z at 6; *id.*, Ex. Y at 3.

**Public Domain and Official Acknowledgement**

35. The biographic data elements collected from applicants to implement Section 5(a) of Exec. Order 13,780 and the Presidential Memorandum are in the public domain. Bates Decl., Ex. U ¶¶ 5, 7; *id.*, Ex. GG at 1-3; *id.*, Ex. PP at 1; *see id.*, Ex. X.

36. The names of the following SAO checks are in the public domain: Bear, Condor, Donkey, Eagle, Horse, Mantis, Merlin, Pegasus. Bates Decl., Ex. OO at 75, 78; *id.*, Ex. EE at 22-24, 39, 42, 54; *id.*, Ex. DD at 6-8.

37. The State Department's involvement in the following SAO checks is in the public domain: Bear, Condor, Donkey, Eagle, Mantis, Merlin. Bates Decl. Ex. OO at 75, 78; *id.*, Ex. Q at 4-5. The FBI's involvement in the SAO checks is in the public domain. Bates Decl., Ex. OO at 78.

38. Officially acknowledged systems include the Consular Lookout and Support System ("CLASS"), the Consular Consolidated Database ("CCD"), the Kingfisher Expansion ("KFE") counterterrorism visa vetting system, the Terrorist Identities Datamart Environment ("TIDE"), and the Terrorist Screening Center's Terrorist Screening Database ("TSDB"), the Automated Biometric Identification System ("IDENT"). *See, e.g.*, Bates Decl., Ex. EE at 22-24, 54; *id.*, Ex. TT at 3-6; *id.*, Ex. Q at 3-5, 7-8.

39. The profiles of visa applicants who are subject to the following SAO checks are in the public domain: Bear, Donkey, Eagle, Mantis, Merlin. *See* Bates Decl., Ex. U ¶¶ 6-7, 9, 15, 17; *id.*, Ex. OO at 78; *id.*, Ex. SS.

40. The existence of the National Vetting Center (NVC) is in the public domain. Bates Decl., Ex. ZZ § 2; *see id.*, Ex. YY.

41. The "primary mission of the NVC" is to create, maintain, and facilitate the operation of "a consolidated process that allows for a coordinated review of relevant intelligence and law enforcement information to ensure that immigration and border security decisions are fully informed and accurately implemented by adjudicators consistent with existing authorities." Bates Decl., Ex. YY.

**Classified Material**

42. Defendants did not identify by name and title a specific person at the NSA who reviewed the NSA's equities in the Report and who is an original classification authority under a written delegation of authority by the NSA. *See* Koch Decl. ¶ 13.

43. Defendants did not identify by name and title a specific person at the CIA who reviewed the CIA's equities in the Report and who is an original classification authority under a written delegation of authority by the CIA. *See* Koch Decl. ¶ 13.

44. The Report is marked as classified under section 1.4(a) of E.O. 13526, not under 1.4(c) of E.O. 13526. Koch Decl. ¶ 19 n.2.

45. The government has officially acknowledged some of the information withheld from the Report under Exemption 1 and/or Exemption 3 included security checks and databases associated with its visa screening and vetting process. *See* Bates Decl., Ex. EE at 22-24, 39, 42, 54; *id.*, Ex. DD at 6-8; *id.*, Ex. OO at 75, 78.

**Parties' Jointly Proposed Briefing Schedule**

**46.** The parties' jointly proposed summary judgment briefing schedule, which the Court adopted and ordered, contemplated that Plaintiffs would challenge the government's withholdings in four State Department documents: "ALDAC: Heightened Screening of Visa Applications – Further Guidance; MRN: 17 STATE 52856"; "Operational Q&As on

17 STATE 25814 and 17 STATE 52856"; "Supporting Statement for Paperwork Reduction Act Submission," related to 82 Fed. Reg. 20,956; and the Report.  *See* ECF No. 211 ¶¶ 1-2; ECF No. 214.

**Cable and Operational Q&A**

47. State withheld the words "Donkey SAO" from the Cable. *See* Opila Decl., Ex. 1 ¶ 2(b); *Compare* Bates Decl., Ex. U ¶ 6-7, 9, 15, 17 (announcing this security check), *with id.*, Ex. H at 6-8, 10 (redacting this security check).

48. The fact that State directed all diplomatic and consular posts to collect the additional information specified in DS-5355 from all individuals subjected to "Donkey SAOs" as a result of State's guidance implementing the Order and the Memorandum, is in the public domain. *See* Bates Decl., Ex. U ¶ 7; *id.*, Ex. PP; *id.*, Ex. QQ; *id.*, Ex. RR; *id.*, Ex. SS; *id.*, Ex. UU at 2-3.

49. State withheld "221(g) discretion to deny" from Exhibit A. *See* Opila Decl., Ex. 1 at 3-4 ¶ 2(b); *compare* Bates Decl., Ex. U ¶ 4 (announcing this authority); *with id.*, Ex. A ¶¶ 14-15 (redacting this authority).

50. State's guidance to all diplomatic and consular posts that officers have discretion to deny a visa application under INA § 221(g) to run a SAO check or further investigate a visa applicant, is in the public domain. *See* Bates Decl., Ex. Q at 4; *id.*, Ex. EE at 22-23; *id.*, Ex. U ¶ 4; *id.*, Ex. RR.

51. State withheld the phrase "Visa Viper" program from the Cable, but it disclosed that information to Plaintiffs in an earlier production of the same cable.  *Compare* Bates Decl., Ex. A ¶¶ 4, 7 (disclosing the phrase); *with id.*, Ex. S ¶¶ 4, 7 (withholding the phrase).

52. State withheld all section headings in the body of the Operational Q&A, but it disclosed some of the same section headings at the top of the Operational Q&A in the Table of Contents. *Compare* Bates Decl., Ex. B at 1; *with id.* at 2-10.

**PRA Supporting Statement**

53. State shared drafts of its guidance implementing Exec. Order 13,780 with senior White House advisor Stephen Miller. Bates Decl., Ex. F at 1-5; *id.*, Ex. G at 1; *see id.*, Ex. L.

54. State shared drafts of documents in support of its emergency OMB authorization application for DS-5355 with senior White House advisor Stephen Miller. Bates Decl., Ex. J at 1-5; *see id.*, Ex. L.

55. State's April 28, 2017 Paperwork Reduction Act Submission for new collection of information included the proposed form DS-5535. Bates Decl., Ex. O.

56. State's April 28, 2017 Paperwork Reduction Act Submission for new collection of information included a Supporting Statement. Bates Decl., Ex. O.

57. State withheld a version of its PRA Supporting Statement in full in this case ("PRA Supporting Statement"). Bates Decl., Ex. O; *see id.*, Ex. C.

58. State's PRA Supporting Statement provided information responsive to OMB's set of specific instructions in a document titled "Creating a Supporting Statement Part A." Bates Decl., Ex. XX; *see id.*, Ex. C.

59. State's PRA Supporting Statement described "whether, and to what extent, the collection of information involves the use of automated, electronic, mechanical, or other technological collection techniques or other forms of information technology," and "any consideration of using information technology to reduce burden." Bates Decl., Ex. XX, Specific Instructions ¶ 3; *see id.*, Ex. C.

60. State's PRA Supporting Statement described whether the information collection impacts small businesses or other small entities.  Bates Decl., Ex. XX Specific Instructions ¶ 5; *see id.*, Ex. C.

61. State's PRA Supporting Statement described State's efforts to consult with persons outside the agency about the frequency of the data collection and the clarity of instructions and recordkeeping or confirmed if State made no such efforts.  Bates Decl., Ex. XX Specific Instructions ¶ 8; *see id.*, Ex. C.

62. State's PRA Supporting Statement explained whether State decided to provide any payment or gift to respondents.  Bates Decl., Ex. XX Specific Instructions ¶ 9; *see id.*, Ex. C.

63. State's PRA Supporting Statement includes an estimate for the total annual cost burden to respondents or record keepers resulting from the collection of information.  Bates Decl. Specific Instructions ¶ 13, Ex. XX; *see id.*, Ex. C.

64. State's PRA Supporting Statement includes estimates of annualized costs to the Federal government, a description of the method used to estimate cost, and any other expense that would not have been incurred without the information collection.  Bates Decl., Ex. XX Specific Instructions ¶ 14; *see id.* Ex. C.

65. OMB approved State's request for emergency authorization under the PRA on May 23, 2017.  Bates Decl., Ex. X.

//

//

//

//

Dated: February 13, 2023

Respectfully submitted,


 /s/    Linda B. Evarts                                /s/   Muneer I. Ahmad
Linda B Evarts, *pro hac vice**            Muneer I. Ahmad, Supervising Attorney,
Adam Bates, *pro hac vice*                  ct28109
Steven Poellet, *pro hac vice*             Jerome N. Frank Legal Services Organization
INTERNATIONAL REFUGEE ASSISTANCE    Yale Law School
PROJECT                                          P.O. Box 902020
One Battery Park Plaza, 33rd Floor       New Haven, CT 06520
New York, New York 10004                  muneer.ahmad@ylsclinics.org
Tel: (516) 838-1655                            Telephone: (203) 432-4800
Fax: (516) 324-2267                            Fax: (203) 432-1426
levarts@refugeerights.org
abates@refugeerights.org                   Nicholas Espiritu, *pro hac vice*
spoellet@refugeerights.org                 Joshua Stehlik, *pro hac vice*
                                                     National Immigration Law Center
*\*D. Conn. petition for admission approved,*   3450 Wilshire Blvd. #108-62
*pending oath ceremony*                      Los Angeles, CA 90010
                                                     Telephone: (213) 639-3900
                                                     Fax: (213) 639-3911
                                                     espiritu@nilc.org
                                                     stehlik@nilc.org
*Counsel for Plaintiffs*